Anthony J. Sylvester
Anthony C. Valenziano
SHERMAN ATLAS SYLVESTER & STAMELMAN LLP
210 Park Avenue, 2nd Floor
Florham Park, NJ 07932
(973) 302-9700

Debra Bogo-Ernst (*pro hac vice forthcoming*)
Lucia Nale (*pro hac vice forthcoming*)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
(312) 782-0600

Andrew J. Demko (*pro hac vice forthcoming*)
MAYER BROWN LLP
350 S. Grand Ave., 25th Floor
Los Angeles, CA 90071
(213) 229-9500

Attorneys for Defendant
Provident Bank

| | |
|---|---|
| JUDY COLLINS, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>PROVIDENT BANK,<br><br>Defendant. | UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY<br><br>CIVIL ACTION NO. 2:22-cv-03422<br><br>CIVIL ACTION<br><br>**NOTICE OF REMOVAL**<br><br>Removed from the Superior Court of New Jersey, Law Division, Hudson County |

**TO:**

Clerk
United States District Court, District of New Jersey
M.L. King, Jr. Federal Bldg. & U.S. Courthouse
50 Walnut Street
Newark, NJ 07102

1

**WITH NOTICE TO:**

Clerk
New Jersey Superior Court, Law Division
Hudson Vicinage
Hudson County Administration Building
595 Newark Avenue
Jersey City, NJ 07306

Bruce D. Greenberg, Esq.
Lite DePalma Greenberg & Afanador, LLC
570 Broad Street, Suite 1201
Newark, NJ 07102

Jeffrey D. Kaliel, Esq.
KalielGold PLLC
110 15th Street NW, 4th Floor
Washington, DC 20005

Sophia G. Gold, Esq.
KalielGold PLLC
950 Gilman Street, Suite 200
Berkeley, CA 94710

*Attorneys for Plaintiff*

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendant Provident Bank ("Provident"),

hereby provides notice of the removal of the above-captioned case from the Superior Court of New

Jersey, Law Division, Hudson County, to the United States District Court for the District of New

Jersey. The grounds for removal are as follows:

**A.    INTRODUCTION.**

1.    On May 2, 2022, Plaintiff filed a Class Action Complaint with the Superior

Court of New Jersey, Law Division, Hudson County (the "Complaint") in an action

captioned *Judy Collins v. Provident Bank*, Case No. HUD-L-1429-22. The Complaint,

Track Assignment Notice, and Affidavit of Service is attached hereto as **Exhibit A**. To

Provident's knowledge, no additional process, pleading or order has been filed to date in this action outside of those attached as **Exhibit A**.

2.      Plaintiff asserts a breach of contract claim challenging Provident's assessment of overdraft fees on transactions that were allegedly authorized when the checking account had a positive balance but later settled when the checking account had a negative balance.  Plaintiff asserts a claim on behalf of herself and all Provident checking account holders who were charged the challenged fees.  Compl. ¶ 104.

3.      As shown below, this Court has original subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(d)(2).  As a result, the case can be removed by Provident to federal district court pursuant to 28 U.S.C. § 1441(a).

4.      Provident intends no admission of liability or amount of damages by this notice and expressly reserves all defenses, motions, and arguments, including without limitation challenges to the sufficiency of Plaintiff's pleadings.

**B.      SUBJECT MATTER JURISDICTION.**

5.      This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2).  The action satisfies the requirements of § 1332(d)(2) because it is a proposed class action in which at least one member of the putative class is a citizen of a State different from Provident and the matter in controversy exceeds $5 million, exclusive of interest and costs.

6.      Many members of the putative class are citizens of a State different from Provident.  *See* 28 U.S.C. § 1332(d)(2)(A).  Provident is a New Jersey chartered bank, incorporated in New Jersey, with its headquarters in Jersey City, New Jersey, and is thus a New Jersey citizen.  Plaintiff is a citizen of Pennsylvania, and the putative class includes citizens of Pennsylvania, New York, and New Jersey.  *See* Compl. ¶ 4 (alleging that Plaintiff is a resident of Pennsylvania); *id.* ¶¶ 5,

104 (alleging that Provident operated in New Jersey and New York and the class definition encompasses all Provident customers, regardless of geography).

7.      While the exact amount of allegedly improper non-sufficient funds fees and overdraft fees at issue will be the subject of expert discovery, the amount in controversy exceeds $5 million.  *See* 28 U.S.C. § 1332(d)(2), (6).[1]

8.      Plaintiff seeks to represent a multi-state class of "[a]ll Provident Bank checking account holders who . . . were charged OD Fees on transactions that were authorized into a positive available balance" during the applicable statute of limitations.  Compl. ¶ 104.  Plaintiff alleges that the class contains "thousands" of members.  *Id.* ¶ 107.

9.      From 2017 to present (the applicable statute of limitations period), Provident charged checking account holders overdraft fees totaling more than five million dollars ($5,000,000) in overdraft fees on point of sale debit card transactions.

10.      Given the time period allegedly at issue, the fact that Provident charged checking account holders overdraft fees totaling more than five million dollars ($5,000,000), is by itself sufficient to establish that at least $5 million is in controversy in this case.  *See Raskas v. Johnson & Johnson*, 719 F.3d 884, 887-88 (8th Cir. 2013); *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400-02 (9th Cir. 2010); *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 983 (7th Cir. 2008).

11.      Indeed, Plaintiff alleges that Provident charged its customers "millions of dollars" in allegedly improper overdraft fees.  Compl. ¶¶ 2, 18.

12.      Section 1332(d)(5) does not preclude jurisdiction.  No governmental entity is a defendant.  And the putative class allegedly contains at least 100 members.  Compl. ¶ 61.

---

[1] By alleging that the amount in controversy exceeds $5 million, Provident does not concede that Plaintiff and the putative class have actually incurred more than $5 million in damages and reserves the right to challenge any damages calculations offered by Plaintiff.

13.     Section 1332(d)(9) does not preclude jurisdiction.  This case does not relate to securities or the internal affairs or governance of a business enterprise.

**C.     PROCEDURAL COMPLIANCE.**

14.     This Notice of Removal was properly filed in the United States District Court for the District of New Jersey because Plaintiff's state court Complaint is pending in the Superior Court of New Jersey, Law Division, Hudson County, which is within this federal judicial district. 28 U.S.C. § 1441(a).

15.     Provident was served with Plaintiff's Complaint on May 4, 2022, and did not previously receive a copy of the Complaint by other means.  Accordingly, this Notice of Removal is timely.  *See* 28 U.S.C. § 1446(b)(1) (notice of removal "shall be filed within 30 days after the receipt by defendant, through service or otherwise" of the complaint).

16.     A copy of this Notice of Removal will also be filed electronically with the Clerk of the Superior Court of New Jersey, Law Division, Hudson County, as required by 28 U.S.C. § 1446(d).

WHEREFORE, Defendant Provident Bank respectfully requests that its Notice of Removal be deemed good and sufficient and for this Court to exercise subject matter jurisdiction over this removed action.

Dated: June 3, 2022                         Respectfully submitted,

                                            /s/Anthony J. Sylvester
                                            Anthony J. Sylvester
                                            Anthony C. Valenziano
                                            Sherman Atlas Sylvester & Stamelman LLP
                                            210 Park Avenue, 2nd Floor
                                            Florham Park, NJ  07932
                                            (973) 302-9700
                                            asylvester@shermanatlas.com
                                            avalenziano@shermanatlas.com

Debra Bogo-Ernst (*pro hac vice forthcoming*)
Lucia Nale (*pro hac vice forthcoming*)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
(312) 782-0600
dernst@mayerbrown.com
lnale@mayerbrown.com

Andrew J. Demko (*pro hac vice forthcoming*)
MAYER BROWN LLP
350 S. Grand Ave., 25th Floor
Los Angeles, CA 90071
(213) 229-9500
ademko@mayerbrown.com

*Attorneys for Provident Bank*

4858-9346-1027, v. 1

# EXHIBIT A

**LITE DEPALMA GREENBERG & AFANADOR, LLC**
Bruce D. Greenberg (NJ ID# 014951982)
570 Broad Street, Suite 1201
Newark, New Jersey 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0858
Email: bgreenberg@litedepalma.com

*Attorneys for Plaintiff*

*[Additional Counsel Listed on Signature Page]*

| | | |
|---|---|---|
| | : | |
| JUDY COLLINS, on behalf of herself and all others similarly situated, | : | SUPERIOR COURT OF NEW JERSEY LAW DIVISION, HUDSON COUNTY |
| | : | |
| *Plaintiff*, | : | Docket No. HUD-L- |
| | : | |
| v. | : | |
| | : | |
| PROVIDENT BANK, | : | |
| | : | |
| *Defendant*. | : | |
| | : | |

Plaintiff Judy Collins, by counsel, and for her Class Action Complaint against Defendant Provident Bank, alleges as follows:

## <u>INTRODUCTION</u>

1.      Plaintiff brings this action individually and on behalf of all similarly situated consumers against Defendant Provident Bank ("Provident Bank" or "Bank"), arising from its routine practice of assessing an overdraft fee ("OD Fee") on transactions that did not actually overdraw checking accounts.

2.      Provident Bank's customers have been injured by the Bank's improper practices to the tune of millions of dollars bilked from their accounts in violation Provident Bank's clear contractual commitments.

912114.1

3.      Plaintiff, on behalf of herself and a Class of similarly situated consumers, seeks to end Provident Bank's abusive and predatory practices and force it to refund all of these improper charges. Plaintiff asserts a claim for breach of contract, including breach of the covenant of good faith and fair dealing, and seeks damages, restitution, and injunctive relief, as set forth more fully below.

## PARTIES

4.      Plaintiff is a citizen and resident of Allentown, Pennsylvania.

5.      Defendant Provident Bank is engaged in the business of providing retail banking services to consumers, including Plaintiff and members of the putative Class. Provident Bank has its headquarters in Jersey City, New Jersey and operates banking branches throughout New Jersey and New York.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this matter, as Provident Bank is headquartered in and does substantial business in Hudson County.  For the same reasons, venue in this Court is proper pursuant to Rule 4:3-2(a) of the New Jersey Court Rules.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### PROVIDENT BANK CHARGES OD FEES ON TRANSACTIONS THAT DO NOT ACTUALLY OVERDRAW THE ACCOUNT

7.      Plaintiff has a checking account with Provident Bank.

8.      Provident Bank issues debit cards to its checking account customers, including Plaintiff, which allows its customers to have electronic access to their checking accounts for purchases, payments, withdrawals, and other electronic debit transactions.

9.      Pursuant to its Account Documents, Provident Bank charges fees for transactions that purportedly result in an overdraft.

912114.1

10.     Plaintiff brings this cause of action challenging Provident Bank's practice of charging OD Fees on what are referred to in this complaint as "Authorize Positive, Purportedly Settle Negative Transactions" ("APPSN Transactions").

11.     Here's how it works. At the moment debit card transactions are authorized on an account with positive funds to cover the transaction, Provident Bank immediately reduces accountholders' checking accounts by the amount of the purchase, sets aside funds in a checking account to cover that transaction, and as a result, the accountholder's displayed "available balance" reflects that subtracted amount. Therefore, customers' accounts will always have sufficient available funds to cover these transactions because Provident Bank has already sequestered these funds for payment.

12.     However, Provident Bank still assesses crippling OD Fees on many of these transactions and mispresents its practices in its Account Documents.

13.     Despite putting aside sufficient available funds for debit card and other POS transactions at the time those transactions are authorized, Provident Bank later assesses OD Fees on those same transactions when they purportedly settle days later into a negative balance. These types of transactions are APPSN Transactions.

14.     Provident Bank maintains a running account balance in real time, tracking funds accountholders have for immediate use. This running account balance is adjusted, in real-time, to account for debit card transactions at the precise instance they are made. When a customer makes a purchase with a debit card, Provident Bank sequesters the funds needed to pay the transaction, subtracting the dollar amount of the transaction from the customer's available balance. Such funds are not available for any other use by the accountholder, and such funds are specifically associated with a given debit card transaction.

3

15.     That means when any *subsequent*, intervening transactions are initiated on a checking account, they are compared against an account balance that has already been reduced to account for any earlier debit card transactions. This means that many subsequent transactions incur OD Fees due to the unavailability of the funds sequestered for those debit card transactions.

16.     Still, despite keeping those held funds off-limits for other transactions, Provident Bank improperly charges OD Fees on those APPSN Transactions, even though the APPSN Transactions **always** have sufficient available funds to be covered.

17.     Indeed, the Consumer Financial Protection Bureau ("CFPB") has expressed concern with this very issue, flatly calling the practice "unfair" and/or "deceptive" when:

> A financial institution authorized an electronic transaction, which reduced a customer's available balance but did not result in an overdraft at the time of authorization; settlement of a subsequent unrelated transaction that further lowered the customer's available balance and pushed the account into overdraft status; and when the original electronic transaction was later presented for settlement, because of the intervening transaction and overdraft fee, the electronic transaction also posted as an overdraft and an additional overdraft fee was charged. Because such fees caused harm to consumers, one or more supervised entities were found to have acted unfairly when they charged fees in the manner described above. Consumers likely had no reason to anticipate this practice, which was not appropriately disclosed. They therefore could not reasonably avoid incurring the overdraft fees charged. Consistent with the deception findings summarized above, examiners found that the failure to properly disclose the practice of charging overdraft fees in these circumstances was deceptive. At one or more institutions, examiners found deceptive practices relating to the disclosure of overdraft processing logic for electronic transactions. Examiners noted that these disclosures created a misimpression that the institutions would not charge an overdraft fee with respect to an electronic transaction if the authorization of the transaction did not push the customer's available balance into overdraft status. But the institutions assessed overdraft fees for electronic transactions in a manner inconsistent with the overall net impression created by the disclosures. Examiners therefore concluded that the disclosures were misleading or likely to mislead, and because such misimpressions could be material to a reasonable consumer's decision-making and actions, examiners found the practice to be deceptive. Furthermore, because consumers were substantially injured or likely to be so injured by overdraft fees assessed contrary to the overall net impression created by the disclosures (in a manner not outweighed by countervailing benefits to consumers or competition), and because consumers could not reasonably avoid the fees (given the misimpressions created

912114.1

by the disclosures), the practice of assessing fees under these circumstances was found to be unfair.

Consumer Financial Protection Bureau, Winter 2015 "Supervisory Highlights."

18.     There is no justification for these practices, other than to maximize Provident Bank's OD Fee revenue. APPSN Transactions only exist because intervening checking account transactions supposedly reduce an account balance. But Provident Bank is free to protect its interests and either reject those intervening transactions or charge OD Fees on those intervening transactions—and it does the latter to the tune of millions of dollars each year. But Provident Bank was not content with these millions in OD Fees. Instead, it sought millions *more* in OD Fees on these APPSN Transactions.

19.     Besides being unfair and unjust, these practices breach contract promises made in Provident Bank's adhesion contracts—contracts which fail to inform accountholders about the true nature of Provident Bank's processes and practices. These practices also exploit contractual discretion to gouge accountholders.

20.     In plain, clear, and simple language, the Account Documents covering OD Fees promise that Provident Bank will charge OD Fees ONLY on transactions that have insufficient funds to cover that transaction.

21.     In short, Provident Bank is not authorized by contract to charge OD Fees on transactions that have not overdrawn an account, but it has done so and continues to do so.

### A.     *Mechanics of a Debit Card Transaction*

22.     A debit card transaction occurs in two parts. First, authorization for the purchase amount is instantaneously obtained by the merchant from Provident Bank. When a merchant physically or virtually "swipes" a customer's debit card, the credit card terminal connects, via an

912114.1

intermediary, to Provident Bank, which verifies that the customer's account is valid and that sufficient available funds exist to cover the transaction amount.

67.    At this step, if the transaction is approved, Provident Bank immediately decrements the funds in an accountholder's account and sequesters funds in the amount of the transaction but does not yet transfer the funds to the merchant.

68.    Indeed, the entire purpose of the immediate debit and hold of positive funds is to ensure that there are enough funds in the account to pay the transaction when it settles, as discussed in the Federal Register notice announcing revisions to certain provisions of the Truth in Lending Act regulations:

> When a consumer uses a debit card to make a purchase, a hold may be placed on funds in the consumer's account to ensure that the consumer has sufficient funds in the account when the transaction is presented for settlement. This is commonly referred to as a "debit hold." During the time the debit hold remains in place, which may be up to three days after authorization, those funds may be unavailable for the consumer's use for other transactions.

Federal Reserve Board, Office of Thrift Supervision, and National Credit Union Administration, Unfair or Deceptive Acts or Practices, 74 FR 5498-01 (Jan. 29, 2009).

69.    Sometime thereafter, the funds are actually transferred from the customer's account to the merchant's account.

70.    Provident Bank (like all banks and credit unions) decides whether to "pay" debit card transactions at authorization. After that, Provident Bank is obligated to pay the transaction no matter what. For debit card transactions, that moment of decision can only occur at the point of sale, at the instant the transaction is authorized or declined. It is at that point—and only that point—when Provident Bank may choose to either pay the transaction or decline it. When the time comes to actually settle the transaction, it is too late—the financial institution has no discretion and must pay the charge. This "must pay" rule applies industry wide and requires that, once a financial

institution authorizes a debit card transaction, it "must pay" it when the merchant later makes a demand, regardless of other account activity. *See* Electronic Fund Transfers, 74 Fed. Reg. 59033-01, 59046 (Nov. 17, 2009).

71.     There is no change—no impact whatsoever—to the available funds in an account when this step occurs.

### B.     Provident Bank's Account Contract

72.     Plaintiff has a checking account with Provident Bank, which is governed by Provident Bank's standardized Account Documents.

73.     The Account Documents indicate that Provident Bank will pay overdrafts only when an accountholder lacks sufficient funds to pay for a transaction, reserving discretion for whether to pay an overdraft:

> The amount of overdraft coverage available will be based upon the way you handle your account. As such, your account activity will be automatically reviewed each day to determine the amount of funds available to cover items presented that day for which you do not have sufficient collected funds on deposit (i.e. your inadvertent overdrafts). Any and all fees and charges, including up to six (6) insufficient funds/overdraft fees per business day (set forth in our Consumer Deposit Accounts Terms and Conditions Agreement), will be charged against the amount available to cover overdrafts and will apply singularly to each transaction that overdraws your account whereby the resulting overdraft balance excluding the overdraft fee is greater than $5.00. Transactions subject to this Policy include overdrafts resulting from, but not limited to: payments authorized by check, ACH/electronic items, and ATM/debit card/withdrawals/purchases.
>
> **We may refuse to pay an overdraft for you at any time, even though your account is in good standing and even though we may have previously paid overdrafts for you.** You will be notified by mail of any insufficient funds items paid or returned unpaid that you may have (including related insufficient funds and/ or overdraft fees); however, we have no obligation to notify you before we pay or return any item. **The amount of any overdrafts plus our insufficient funds and/or overdraft fee(s) that you owe us shall be due and payable upon demand.** If there is an overdraft paid by us on an account with more than one (1) owner, each owner (and agent, if applicable) shall be jointly and severally liable for such overdrafts plus our fee(s) as previously noted.

Exhibit A, p. 64.

7

912114.1

74.     The Overdraft Opt-In form makes the same promises:

**What You Need to Know about Overdrafts and Overdraft Fees.**
An overdraft occurs when you do not have enough money in your account to cover a transaction, but we pay it anyway. We can cover your overdrafts in two different ways:
• We have standard overdraft practices (Overdraft Privilege - ODP) that come with your account.
• We also offer other overdraft protection plans, such as a line of credit or a link to another deposit account, which may be less expensive than our standard overdraft practices. To learn more, ask us about these plans.

**What are the standard overdraft practices that come with my account?**
We do authorize and pay overdrafts for the following types of transactions:
 • Checks and other transactions made using your checking account number
• Automatic bill payments

We do not authorize and pay overdrafts for the following types of transactions unless you ask us to:
• ATM transactions
• Everyday debit card transactions

We pay overdrafts at our discretion, which means we do not guarantee that we will always authorize and pay any type of transaction.

If we do not authorize and pay an overdraft, your transaction will be declined.

**What fees will I be charged if Provident pays my overdraft?**

Under our standard overdraft practices:
• We will charge you a fee of $35.00* each time we pay an overdraft.
• The total number of insufficient/overdraft fees we can charge you through Overdraft Privilege for overdrawing your account is limited to six (6) fees in one (1) business day. No overdraft fee is charged if the resulting overdraft balance is $5.00 or less.

Exhibit A, p. 65.

75.     For APPSN Transactions, which are immediately deducted from a positive account

balance and should be held aside for payment of that same transaction, there are always funds to

cover those transactions—yet Provident Bank assesses OD Fees on them anyway.

912114.1

76.     The above promises mean that transactions are overdraft transactions only when they are authorized into a negative account balance. Of course, that is not true for APPSN Transactions.

77.     APPSN transactions are always initiated at a time when there are sufficient available funds in the account.

78.     In fact, Provident Bank actually authorizes transactions on positive funds, claims to set those funds aside on hold, but then fails to use those same funds to settle those same transactions. Instead, it uses a secret posting process described below.

79.     All the above representations and contractual promises are untrue. In fact, Provident Bank charges OD Fees even when sufficient funds exist to cover transactions that are authorized into a positive balance. No express language in any document states that Provident Bank may impose OD Fees on any APPSN Transactions.

80.     First, and most fundamentally, Provident Bank charges OD Fees on debit card transactions for which there are sufficient funds available to cover the transactions. That is despite contractual representations that Provident Bank will only charge OD Fees on transactions with insufficient available funds to cover a given transaction.

81.     Provident Bank assesses OD Fees on APPSN Transactions that _**do**_ have sufficient funds available to cover them throughout their lifecycle.

82.     Provident Bank's practice of charging OD Fees even when sufficient available funds exist to cover a transaction violates a contractual promise not to do so. This discrepancy between Provident Bank's actual practice and the contract causes accountholders like the Plaintiff to incur more OD Fees than they should.

912114.1

83.     Next, sufficient funds for APPSN Transactions are actually debited from the account immediately, consistent with standard industry practice.

84.     Because these withdrawals take place upon initiation, they cannot be re-debited later. But that is what Provident Bank does when it re-debits the account during a secret batch posting process.

85.     In reality, Provident Bank's actual practice is to deduct the same debit card transaction twice to determine if the transaction overdraws an account—both at the time a transaction is authorized and later at the time of settlement.

86.     At the time of settlement, however, an available balance *does not change at all* for these transactions previously authorized into good funds. As such, Provident Bank cannot then charge an OD Fee on such transaction because the available balance has not been rendered insufficient due to the pseudo-event of settlement.

87.     Upon information and belief, something more is going on: at the moment a debit card transaction is getting ready to settle, Provident Bank does something new and unexpected, during the middle of the night, during its nightly batch posting process. Specifically, Provident Bank releases the hold placed on funds for the transaction for a split second, putting money back into the account, then re-debits the same transaction a second time.

88.     This secret step allows Provident Bank to charge OD Fees on transactions that never should have caused an overdraft—transactions that were authorized into sufficient funds, and for which Provident Bank specifically set aside money to pay them.

89.     This discrepancy between Provident Bank's actual practices and the contract causes accountholders to incur more OD Fees than they should.

912114.1

90.     In sum, there is a huge gap between Provident Bank's practices as described in the Account Documents and Provident Bank's practices in reality.

### C.     *Provident Bank Abuses Contractual Discretion*

91.     Provident Bank's treatment of debit card transactions to charge OD Fees is not simply a breach of the express terms of the numerous Account Documents. In addition, Provident Bank exploits contractual discretion to the detriment of accountholders when it uses these policies.

92.     Provident Bank uses its contractual discretion to cause APPSN Transactions to incur OD Fees by knowingly authorizing later transactions that it allows to consume available funds previously sequestered for APPSN Transactions.

93.     Provident Bank uses this contractual discretion unfairly to extract OD Fees on transactions that no reasonable accountholder would believe could cause OD Fees.

### D.     *Reasonable Accountholders Understand Debit Card/POS Transactions Are Debited Immediately*

94.     The assessment of OD Fees on APPSN Transactions is fundamentally inconsistent with immediate deduction and holding of funds for debit card/POS transactions. That is because, if funds are immediately debited from the balance and held, they cannot be depleted by intervening transactions (and it is that subsequent depletion that is the necessary condition of APPSN Transactions). If funds are immediately debited from the available balance, then they are necessarily available to be applied to the debit card transactions for which they are debited.

95.     Provident Bank was and is aware that this is precisely how accountholders reasonably understand such transactions to work.

96.     Provident Bank knows that many accountholders prefer debit cards for this very reason. Research indicates that accountholders prefer debit cards as a budgeting device because

11

they do not allow debt like credit cards do, and because the money comes directly out of a checking account.

97.     Consumer Action, a national nonprofit consumer education and advocacy organization, advises consumers determining whether they should use a debit card that "[t]here is no grace period on debit card purchases the way there is on credit card purchases; the money is immediately deducted from your checking account. Also, when you use a debit card you lose the one or two days of 'float' time that a check usually takes to clear." *What Do I Need to Know About Using a Debit Card?*, Consumer Action (Jan. 14, 2019), https://www.consumer-action.org/helpdesk/articles/what_do_i_need_to_know_about_using_a_debit_card (last visited June 4, 2021).

98.     Further, Consumer Action informs consumers that "Debit cards offer the convenience of paying with plastic without the risk of overspending. When you use a debit card, you do not get a monthly bill. You also avoid the finance charges and debt that can come with a credit card if not paid off in full." *Understanding Debit Cards*, Consumer Action, http://www.consumer-action.org/english/articles/understanding_debit_cards (last visited June 4, 2021).

99.     This understanding is a large part of the reason that debit cards have risen in popularity. The number of terminals that accept debit cards in the United States increased by approximately 1.4 million in a recent five year period and, with that increasing ubiquity, consumers have (along with credit cards) viewed debit cards "as a more convenient option than refilling their wallets with cash from an ATM." Maria LaMagna, *Debit Cards Gaining on Case for Smallest Purchases,* MarketWatch, Mar. 23, 2016, http://www.marketwatch.com/story/morepeople-are-using-debit-cards-to-buy-a-pack-of-gum-2016-03-23.

912114.1

100.    Not only have accountholders increasingly transitioned from cash to debit cards, but they believe that a debit card purchase is the fundamental equivalent of a cash purchase, with the swipe of a card equating to handing over cash, permanently and irreversibly.

101.    Provident Bank was aware of accountholder perception that debit transactions reduce an available balance *in a specified order*—namely, the moment they are actually initiated—and its account agreement only supports this perception.

### E.    Plaintiff's Experience

102.    As an example, on September 8, 2020, Plaintiff was assessed OD Fees for debit card transactions that settled that day, despite the fact that positive funds were deducted immediately, prior to that day, for the transaction on which Plaintiff was assessed the OD Fee. At the time that the positive funds were deducted, Plaintiff had a positive balance, which would not have caused an OD Fee.

## CLASS ACTION ALLEGATIONS

103.    Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Rule 4:32 of the New Jersey Court Rules.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 4:32-1.

104.    The proposed class is defined as:

All Provident Bank checking account holders who, during the applicable statute of limitations, were charged OD Fees on transactions that were authorized into a positive available balance (the "Class")

105.    Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

106.    Excluded from the Class are Provident Bank, its parents, subsidiaries, affiliates, officers and directors, any entity in which Provident Bank has a controlling interest, all customers

912114.1

who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

107.    The members of the Class are so numerous that joinder is impractical.  The Class consists of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by resort to Provident Bank's records.

108.    The claims of Plaintiff are typical of the claims of the Class in that she, like all Class members, was charged improper OD Fees. Plaintiff, like all Class members, has been damaged by Provident Bank's misconduct in that she paid improper OD Fees.  Furthermore, the factual basis of Provident Bank's misconduct is common to all Class members, and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Class.

109.    There are numerous questions of law and fact common to the Class and those common questions predominate over any questions affecting only individual Class members.

110.    Among the questions of law and fact common to the Class are whether Provident Bank:

a.    Charged OD Fees on transactions when those transactions did not overdraw accounts;

b.    Breached its contract with consumers by charging OD Fees on transactions when those transactions did not overdraw accounts;

c.    Breached the covenant of good faith and fair dealing by charging OD Fees on transactions when those transactions did not overdraw accounts;

d.    Whether Plaintiff and the Class were damaged by Provident Bank's conduct and if so, the proper measure of damages.

912114.1

111.    Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers and against financial institutions.  Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

112.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Provident Bank, no Class member could afford to seek legal redress individually for the claims alleged herein.  Therefore, absent a class action, the Class members will continue to suffer losses and Provident Bank's misconduct will proceed without remedy.  Moreover, given that the improper fees were assessed in a uniform manner, common issues predominate over any questions, to the extent there are any, affecting only individual members.

113.    Even if Class members themselves could afford such individual litigation, the court system could not.  Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court.  Individualized litigation would also create the potential for inconsistent or contradictory rulings.  By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

## FIRST CLAIM FOR RELIEF
### Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing
### (On Behalf of Plaintiff and the Class)

114.    The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

912114.1

115.     Plaintiff and Provident Bank have contracted for bank account deposit, checking, ATM, and debit card services. The contract does not permit Provident Bank to charge OD Fees on transactions that do not actually overdraw an account.

116.     Further, under the laws of New Jersey, good faith is an element of every contract, including the instant Account Documents pertaining to the assessment of OD Fees. Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

117.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified. A failure to act in good faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of violations of good faith and fair dealing include evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

118.     Provident Bank has breached the covenant of good faith and fair dealing in its contract with customers by charging OD Fees on transactions that do not actually overdraw the account *i.e.* when there were sufficient actual funds in the account to cover the transaction.

119.    Provident Bank also breached the express terms of its contract with Plaintiff and the Class by charging OD Fees on transactions that do not actually overdraw the account *i.e.* when there were sufficient actual funds in the account to cover the transaction.

120.    Plaintiff and members of the Class have performed all, or substantially all, of the obligations imposed on them under the contract.

121.    Plaintiff and members of the Class have sustained damages as a result of Provident Bank's breach of the contract.

**SECOND CLAIM FOR RELIEF**
**Violation of the New Jersey Consumer Fraud Act**
**(On Behalf of Plaintiff and the Class)**

122.    The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

123.    Provident Bank's representations regarding its NSF Fee and overdraft fee practices are false, deceptive and misleading, as described above, in violation of N.J.S.A. 56:8-2, in that they constitute an "unconscionable commercial practice, fraud, false pretense, false promise, [and] misrepresentation."

124.    Contrary to its representations in its Account Documents and as otherwise described above, Provident Bank wrongly assesses OD fees on transactions that do not actually overdraw checking accounts, thus violating N.J.S.A. 56:8-2.    Moreover, Provident Bank knowingly concealed, suppressed, and/or omitted the material facts that it would assess OD fees on transactions that do not actually overdraw checking accounts, with the intent that its customers rely upon such concealment, suppression, or omission, thus violating N.J.S.A. 56:8-2 in that regard as well.

912114.1

125.     Provident Bank's misrepresentations and knowing omissions in violation of the New Jersey Consumer Fraud Act caused Plaintiff and members of the Class members to suffer ascertainable loss of moneys or property, thereby entitled Plaintiff and members of the Class to a mandatory award of treble damages, reasonable attorneys' fees, filing fees, and reasonable costs of suit under N.J.S.A. 56:8-19.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and members of the Class demand a jury trial on all claims so triable and judgment as follows:

A.     An order certifying that this action may be maintained as a class action, that Plaintiff be appointed Class Representative and that Plaintiff's counsel be appointed Class Counsel;

B.     A declaration that Provident Bank's OD Fee policies and practices are wrongful, unfair, and unconscionable;

C.     An Order requiring Provident Bank to immediately cease the wrongful conduct set forth above and enjoining Provident Bank from conducting business via the unlawful and unfair business acts and practices complained of herein;

D.     Restitution of all wrongful OD Fees paid to Provident Bank by Plaintiff and members of the Class as a result of the wrongs alleged herein in an amount to be determined at trial;

E.     Actual, exemplary, and treble damages in an amount to be determined at trial;

F.     Pre-judgment interest at the maximum rate permitted by applicable law;

G.     Costs and disbursements assessed by Plaintiff in connection with this action, together with reasonable attorneys' fees pursuant to N.J.S.A. 56:8-19 and other applicable law;

H.     Such other relief as the Court deems just and proper.

912114.1

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury on all issues so triable.

**LITE DEPALMA GREENBERG & AFANADOR, LLC**

Dated: May 2, 2022

                        */s/ Bruce D. Greenberg*
                        Bruce D. Greenberg (NJ ID# 014951982)
                        570 Broad Street, Suite 1201
                        Newark, New Jersey 07102
                        Telephone: (973) 623-3000
                        Facsimile: (973) 623-0858
                        bgreenberg@litedepalma.com

                        **KALIELGOLD PLLC**
                        Jeffrey D. Kaliel
                        1100 15th Street NW, 4th Floor
                        Washington, D.C. 20005
                        Telephone: (202) 350-4783
                        jkaliel@kalielpllc.com

                        **KALIELGOLD PLLC**
                        Sophia G. Gold
                        950 Gilman Street, Suite 200
                        Berkeley, CA 94710
                        Telephone: (202) 350-4783
                        sgold@kalielgold.com

                        *Attorneys for Plaintiff*

# EXHIBIT A



# Provident Bank
# Consumer Deposit Account Disclosures

The following disclosures are provided for your review in conjunction with your application to establish a consumer deposit account at Provident Bank:

1. Terms and Conditions - Consumer Deposit Accounts
2. Funds Availability Policy Regulation CC Disclosure
3. Consumer Identification Program
4. Important Information About Privacy Policy
5. Regulation E Electronic Funds Transfer Disclosure for Consumer Accounts
6. Personal Accounts and Service Fees Brochure
7. Cardholder Agreement And Disclosure For Consumer Accounts
8. Overdraft Protection Disclosure
9. Check 21 Disclosure

Please review these disclosures prior to submitting your deposit account application and retain copies of each disclosure for future reference.

Thank you for choosing Provident Bank!



# CONSUMER DEPOSIT ACCOUNTS
## TERMS AND CONDITIONS AGREEMENT

Effective September 1, 2014

**Provident** BANK

*Commitment you can count on.*℠

Member FDIC

**TABLE OF CONTENTS ..................................................... PAGE**

Introduction ........................................................................2
Rules and Regulations .........................................................2
Reservation of Rights by the Bank ......................................2
Confidentiality ....................................................................2
Types of Accounts ..............................................................2
Eligibility ............................................................................3
Information About You and Your Account ..........................3
How to Access Your Account ..............................................4
Deposits .............................................................................4
Direct Deposits ..................................................................5
Foreign Checks and Non-Routine Items .............................6
Overpayments and Reversal ...............................................7
Returned Items ...................................................................7
Withdrawals .......................................................................8
Preauthorized Transfer Limitations ....................................9
Transfers ..........................................................................10
Payments .........................................................................10
Insufficient Funds, Uncollected Funds and Overdrafts ....11
Periodic Statements .........................................................12
Interest Computation and Balance Information ................13
Interest Reporting ............................................................14
Rewards Type Checking Accounts ....................................14
Certificate of Deposit (CD) Accounts ...............................14
Hassle-Free Holiday Club Accounts ..................................15
Joint Accounts ..................................................................16
Payable on Death Accounts ..............................................17
Trust Accounts .................................................................17
Endorsing Items ...............................................................17
Responsibility for Endorsement .......................................17
Use of Facsimile Signatures .............................................18
Stale-Dated Checks ..........................................................18
Stop-Payment Orders .......................................................18
Unpaid Items ....................................................................19
Postdated and Conditional Checks ...................................19
Fraud and Suspicious Activity ...........................................19
Safeguarding Checks, Account Information and
Access Devices .................................................................20
Lost Instruments ..............................................................21
Claim or Loss ...................................................................21
Assignment and Transfer ..................................................21
Closing an Account ...........................................................21
Converting an Account ......................................................22
Set Off and Collection ......................................................22
Service Fees and Charges .................................................22
Notices .............................................................................23
Change of Name, Postal, and E-mail Addresses ..............24
Change in Terms Notification ...........................................24
Account Verification .........................................................25
Customer's Waiver of Notice ............................................25
Standard of Care ..............................................................25
Compliance ......................................................................26
Limits on Liabilities ..........................................................26
Adverse Claims .................................................................26
Indemnity .........................................................................26
Legal Proceedings ............................................................26
Powers of Attorney/Appointment and Payment
to Agents ..........................................................................27
Account and Other Records .............................................28
Amendments ....................................................................28
Continuing Effect .............................................................28
Business Day .....................................................................28
Banking Hours ..................................................................28

**PERSONAL DEPOSIT ACCOUNTS**
**TERMS AND CONDITIONS AGREEMENT**

**INTRODUCTION**
Thank you for opening and maintaining a consumer deposit account with The Provident Bank. This Personal Deposit Accounts – Terms and Conditions Agreement ("Agreement") contains the terms and conditions governing deposit accounts offered to consumers by The Provident Bank ("Bank"). By applying for an account, either in writing or electronically, and signing an account signature card and/or other documents, you agree that when we open that account it will be governed by this Agreement, the signature card and/or other Account documents, the Personal Accounts and Service Fees brochure which accompany and are part of this Agreement, as well as all applicable State and Federal laws and regulations. You also acknowledge receipt of a copy of (1) this Agreement; (2) the Personal Accounts and Service Fees brochure; (3) the Privacy and Overdraft Privilege Policies; (4) USA PATRIOT Act – Customer Identification Program Notice; and (5) the Federal Regulation E, Regulation CC, Regulation DD, and Check 21 disclosures as applicable to the Account you opened and the services you requested.

In this Agreement, the words "you" and "your" mean the person or persons or entity (e.g., sole proprietorship) that maintains the Account. The words "Bank", "we" or "us" mean The Provident Bank. "Account" means each deposit Account you maintain.

Please read this Agreement in its entirety and retain it and all applicable policies, notices, and disclosures discussed throughout this document for future reference.

**RULES AND REGULATIONS**
This Agreement sets forth the rules and regulations that govern your Account with The Provident Bank. Your Account will also be governed by the signature card and/or other Account documents that you signed or otherwise executed and, if the Account is a multiple party account, by the supplemental Agreement that you received in connection with the signature card. Furthermore, the Account will be subject to the laws, regulations and rules of the State of New Jersey and of the United States. Any change in any of the foregoing that may become effective in the future will also govern the Account. By signing the account signature card or accepting the Account for which you applied, you agree to be bound by the terms and conditions set forth in this Agreement.

**RESERVATION OF RIGHTS BY THE BANK**
Any waiver by the Bank of the rules and regulations governing your Account on any occasion will not constitute a waiver of the same or any other rules and regulations on any other occasion.

**CONFIDENTIALITY**
Information about your Account is confidential. We will not disclose information about you or your relationship with us to anyone except as provided in our Privacy Policy.

**TYPES OF ACCOUNTS**
The Provident Bank offers several different types of checking, savings, certificate of deposit, and Individual Retirement Accounts. The Bank's Personal Accounts and Service Fees brochure describes the consumer checking

2

and savings accounts offered and available to our customers from time-to-time, as well as the general account requirements and applicable service fees. Information regarding certificate of deposit and Individual Retirement Accounts is available on our website (ProvidentNJ.com) or at each of our branch offices.

An automated teller machine (ATM) card or Provident Debit MasterCard is automatically issued with most checking and savings accounts opened and maintained by individuals for their personal use. You must notify us at account opening (or, at your discretion, a later date) if you do not want an ATM card or Provident Debit MasterCard. However, be aware that certain accounts require the use of a debit card to conduct transactions so as to be eligible for the full benefits and/or features of the account.

Transactions processed using your ATM card or Provident Debit MasterCard are governed by The Provident Bank Cardholder Agreement for Consumer Accounts and the Bank's Regulation E - Electronic Fund Transfer Disclosure for Consumer Accounts, incorporated into this Agreement by reference herein.

We reserve the right not to offer all accounts at all times. We may discontinue offering a type of account at any time without notice. However, any account existing at the time of or after the product type is no longer offered will continue to be governed by this Agreement. Information regarding account requirements and service fees for Accounts no longer offered but you maintain is available at each of our branch offices.

**ELIGIBILITY**
Individuals and unincorporated non-business associations may open and maintain consumer checking, savings, and certificate of deposit accounts. Personal trusts, guardianships or conservatorships may open and maintain these accounts. Consumer accounts may not be opened or maintained by corporations, limited liability companies or partnerships, unincorporated business associations, partnerships, or non-profit organizations. If we believe that you are not eligible to own your specific Account type or that you are using your Account for business purposes, we will convert or close the Account at our sole discretion.

**INFORMATION ABOUT YOU AND YOUR ACCOUNT**
When you open a deposit account with us, you give us information about yourself and confirm that it is correct. We enter that information into our records/systems. We may rely on that information until you notify us of a change and we have had a reasonable time to act on the new information.

Federal law, including the USA PATRIOT Act, requires all financial institutions to obtain, verify and record information that identifies each customer who opens an account with that financial institution.

When you apply for an account, we will ask for your legal name, address, date of birth and your Tax Identification Number (TIN). We will require two or more forms of identification, one of which must be a government-issued unexpired photo identification. We may validate the information you provide to us to ensure we have a reasonable assurance of your identity. We may contact you for additional information. When we are not able to

verify your identity to our satisfaction, we will not open your Account if this determination is made at the time that you apply for the Account; if your Account has already been opened and/or funded, we will restrict access to your Account and any funds on deposit until such time that we can close the Account.

We may make any inquiries that we consider appropriate to help us verify your identity and determine if we should open, maintain, collect or close your Account. This may include verification of employment and credit reports or other reports from account information services and credit reporting agencies.

If you ask, we will tell you whether we requested a credit report, and, if we did, we will tell you the name, address, and telephone number of the credit reporting agency.

**HOW TO ACCESS YOUR ACCOUNT**

You can access your Account and obtain information about other products and services available from The Provident Bank:

- at our conveniently located branch offices and Provident-owned ATMs;
- through ProvidentConnect Online Banking and our website ProvidentNJ.com;
- through Provident Mobile Banking Services;
- through our Customer Contact Center at 800.448.PROV (7768).

**DEPOSITS**

Deposits may be made in person, by mail or by any other method the Bank makes available, such as automated teller machines (ATMs; limited to on-site Provident-owned ATMs), automated clearing house (ACH) transactions, and electronic fund transfers (EFTs). With the exception of Provident Mobile Banking – Mobile Check Deposit, deposits must be accompanied by a deposit slip in the form prescribed by the Bank, which may be either completed by you or us. We may make other methods of making deposits available to you for your convenience.

ATM deposits and Mobile Banking – Mobile Check Deposits are available only for checking accounts and statement-type savings accounts; EFT deposits are available for checking, passbook and statement savings accounts.

The Provident Bank is not responsible for deposits made through the mail or electronic means until the Bank actually receives the item(s). In receiving any item(s) for deposit or collection, the Bank will process the item(s) in order to collect final payment. The Bank will not, however, become the owner of the item(s). In processing the item(s), the Bank will not be responsible beyond the exercise of ordinary care. All items are credited subject to the Bank's receipt of final payment of each item.

If the Bank receives any items payable to you with any endorsement missing, the Bank may endorse the item(s) and deposit it in your Account. Items will be handled in accordance with customary banking practices. In its sole discretion, the Bank may refuse to accept a deposit, limit the amount that may be deposited, may return a deposit and/or may close an account. The availability of funds represented by checks deposited is governed by Federal Regulation CC and/or our Funds Availability Policy. You

will receive a copy of our Funds Availability Policy prior to opening your Account and may request an additional copy at any time.

If we accept checks, electronic items/images or other items (hereafter collectively referred to as check or checks) for deposit to your Account or cash them, you are responsible for the checks and other items if there is a subsequent problem with them. Also:

- If we cash a check for you or credit it to your Account and it is not paid for any reason, we may charge your Account for the amount of the check and a fee for handling the check, even if this causes your Account to become overdrawn.
- All deposits are subject to our subsequent verification and adjustment, even if you have already withdrawn all or part of the deposit unless you can prove our determination was erroneous.
- If your Account is overdrawn, we may use the deposit to pay the overdraft and any fees you owe us.
- We may accept a check for deposit to your Account from anyone. We do not have to question the authority of the person making the deposit.
- We may refuse to accept for deposit to your Account checks payable to another person (i.e., double-endorsed checks).
- In receiving checks for deposit or collection, we act only as your collecting agent and assume no responsibility beyond the exercise of ordinary care. We are not responsible for errors and delays made by others in the collection process.
- We may assess a charge for processing cash deposits.
- If you give us cash that we later determine to be counterfeit, we may charge your Account for the amount we determine to be counterfeit.
- You will not knowingly deposit checks to your Account that do not have either a true original signature of the person on whose account it is drawn or an authorized mechanical reproduction of that person's signature.

We are not required to verify that money orders, bank checks, cashier's checks, electronic items/images or similar items are authentic and valid at the time you ask us to cash them or accept them for deposit. If we cash or accept for deposit a money order, bank check, cashier's check, electronic item/image or similar item and we later learn that the item is fraudulent, counterfeit or invalid for some other reason, we may charge your Account for the amount of the item and a fee for handling the item. This may occur even if we previously made the funds available to you, or if this causes your Account to become overdrawn.

With the exception of certificate of deposit accounts, you may make unlimited deposits to your Account each month or statement period.

**DIRECT DEPOSITS**
If the Bank is required to reimburse the Federal government, any State government, or any other entity or person for any payment erroneously deposited to your Account through a direct deposit plan, the Bank, in addition to its other rights, may without prior notice to you, deduct the amount of the direct deposit from any Account you and/or any joint or co-owner may have with the Bank. We may also use any other legal remedy to recover the amount of your liability.

**FOREIGN CHECKS AND NON-ROUTINE ITEMS**

Checks and other items drawn on banks outside of the United States carry a greater risk of non-collection. As such, you should be especially cautious about accepting items drawn on foreign banks.

The Provident Bank may refuse to accept for deposit, collection, and/or subsequent credit to your Account a check or other item drawn on a bank or financial institution outside of the United States whose U.S. dollar value is less than limitations established by us from time-to-time and in effect at the time you present the item. All applicable Provident fees and corresponding bank charges will be deducted from the proceeds and/or your Account balance without exception.

Credit for foreign checks and other non-routine items may not be posted until the date that the funds are received by us from the institution on which the items are drawn.

If we accept an item for deposit which we later determine to be a foreign item, we may decide that the item needs to be sent for collection. If so, we may reverse any credit given for the item and mail the foreign item to you at the address we have on file for your Account statement. You may ask us to send the item for collection.

When we send a foreign item for collection, you understand that the foreign item is sent solely for you and at your risk and that we are not liable for any event in the collection process which is beyond our control. For example, we are not liable for a default by any bank or agent involved in the collection process or for the loss of the foreign item in transit. We will send the foreign item through a correspondent bank. We will deduct our fees and the fees/charges assessed by the correspondent bank, paying bank and any agents involved in the collection process from any amount collected or from your Account.

Upon your request, we will attempt to determine the status of a foreign item sent for collection. You agree to pay all fees and charges related to such a request. We may refuse your request if less than 30 business days have passed since we first processed the foreign item for collection.

If a foreign item is returned to us unpaid for any reason at any time or is initially paid but then subsequently returned unpaid, we will charge your Account for the foreign item and mail the foreign item to you at the address we have on file for your Account statement. Even though the item is returned unpaid, we will charge you or your Account or any Account you and/or any joint or co-owner may have with the Bank for our collection fees and for fees/charges assessed by the correspondent bank, paying bank and any agents involved in the collection process.

When we credit your Account for a foreign item, we use the applicable currency exchange rate on the day we send the item to our correspondent bank, or in instances of guaranteed funds coverage, on the date established by our correspondent bank, to determine the amount of the credit. When we reverse a credit for a foreign item, we use the applicable currency exchange rate on the day we reverse the credit to determine the amount of the debit. Currency exchange rates are highly volatile and our rate on the day of the credit is likely to be different (sometimes very different) than our rate on the day of the debit. You

6

understand and agree that this may result in a currency exchange loss to you.

**OVERPAYMENTS AND REVERSAL**

If funds to which you are not entitled are deposited to your Account by mistake or otherwise, we may deduct these funds from your Account, even if this causes your Account to become overdrawn. If there are not enough funds in your Account, we may overdraw your Account and charge an overdraft fee. If the funds were transferred from your Account, we may reverse the transfer. We can do this without giving you any prior notice or demand.

**RETURNED ITEMS**

As used in this Agreement, returned items are items that you deposit or that we cash for you (a "cashed" or "deposited item") and includes items drawn on The Provident Bank as well as items drawn on other banks or financial institutions. You are responsible for returned items regardless of the reason for return of the item.

If a cashed or deposited item is returned to us at any time for any reason by the bank on which it is drawn or any collecting bank, we may accept that return, pay the claiming party, and charge the item to your Account without regard to whether we or the other bank finally paid the item or returned the item in accordance with any applicable midnight deadline or automated clearing house rule. We may also deduct from your Account any interest you may have provisionally earned on the item. We will charge you a fee for each returned item as listed in our Personal Accounts and Service Fees brochure. We may debit your Account for a returned item at any time on or after the day it is returned to us by electronic, automated clearing house ("ACH") or other means, or on the day we receive notice that the item is being returned to us – whichever is earlier.

For example, if an item deposited in your Account has been paid by the bank on which it is drawn (including on us) and that item is later returned to us with a claim that the item was altered, forged, unauthorized, bears a forged or missing endorsement or should not have been paid for any reason, we may at our discretion charge the item against your Account or place a hold on the amount of that item against your Account until the claim is finally resolved. We may take these actions without prior notice to you and regardless of whether settlement with respect to such item is considered final.

We are not obligated to question the truth of the facts that are asserted, to assess the timeliness of the claim, to take any action to recover payment of a returned item, or to assert any defense. We do not need to notify you in advance of our actions related to the claim. If you do not have sufficient available funds to cover a returned item, we may overdraw your Account. We are not liable to you if there are insufficient funds to pay items you have issued and/or authorized because we withdrew funds from your Account or in any way restricted your access to funds due to a hold or debit to your Account in connection with a returned item. You agree to immediately repay any overdraft caused by the return of a cashed or deposited item.

In some cases, the financial institution on which the returned check or other item is drawn may send us an electronic notice of return, an indemnified copy of the original, an image replacement document ("IRD"), or an image instead

of returning the item. We may act on, and you agree to be bound by, the electronic notice of return, or indemnified copy or IRD just as if the original item had been returned.

We may send the unpaid item back for collection a second time before notifying you, but we are not obligated to do so. You waive any right to notice of dishonor and protest. You agree that we will have no obligation to notify you of any item that is being returned. However, if we receive advance notice from another financial institution that it is returning to us unpaid a check of $2,500 or more, we may telephone you and/or send you a written notice. We will send notice to you about returned checks of any amount.

**WITHDRAWALS**

We reserve the right to approve any and all forms, including checks, used by you with respect to an Account to withdraw funds.

A withdrawal is deemed to be made when it is posted to your Account. The day of posting may not be the day you initiated the withdrawal. We may refuse a withdrawal request if:

- the withdrawal would be paid from funds deposited to your Account but not yet available for withdrawal;
- the withdrawal is greater in number than the number and/or frequency permitted on your Account;
- the withdrawal is for an amount greater or less than any withdrawal limitations applicable to your Account;
- any document or identification we require, or the law requires, in connection with the withdrawal has not been presented to us;
- we have received a court order or other legal document prohibiting the withdrawal(s);
- the law prohibits the withdrawal;
- there is a dispute concerning the Account;
- the Account owner(s) owes us money that is due and payable;
- the Account balance is security for a debt;
- an Account owner or a person we believe to be an agent of an owner requests that we do not permit withdrawals;
- a problem occurs with our equipment; or
- such action is otherwise required by law.

We reserve the right to require withdrawals to be made only at the branch at which your Account is maintained.

**Checking Accounts**

With the exception of ATM, ACH or EFT transactions, withdrawals from checking accounts may only be made by issuing a check in the form prescribed by the Bank or, when instructed by us to do so, by completing a withdrawal slip on a form prescribed by us. In the case of money market accounts, the withdrawal may also be made by use of a withdrawal slip in the form prescribed by the Bank. We may make other methods of making withdrawals available to you for your convenience.

We may also require reasonable identification to conduct a withdrawal via the cashing of a check, draft or other instrument. The Bank will decide what identification is reasonable under the circumstances and such identification may be documentary or physical and may include collecting a thumbprint or fingerprint.

You agree to notify us promptly if any Account owner dies

8

or becomes legally incompetent. The Bank may continue to honor checks, items, and instructions issued by the deceased/incompetent Account owner until: (a) we know of their death or incompetence, and (b) we have had a reasonable opportunity to act on that knowledge. You agree that we may pay or certify checks drawn on or before the date of death or legal incompetence of any Account owner for up to ten (10) days after their death or legal incompetence unless ordered to stop payment by someone claiming an interest in the Account. We reserve the right to require you to give the following advance written notice of your intention to make a withdrawal: seven-days advance notice on money market accounts. Payment by the Bank without requiring the seven-days advance notice will not constitute a waiver by the Bank of the right to require such notice.

**Passbook Savings, Statement Savings and Certificate of Deposit (CD) Accounts**
You may make a withdrawal from your passbook savings and passbook certificate of deposit (partial redemption) Accounts by presenting the passbook and a signed withdrawal request on a form acceptable to the Bank, and from your statement savings and statement CD Account by presenting a signed withdrawal request on the form prescribed by the Bank. We reserve the right to require such documentation and authorization as we deem necessary or appropriate to determine that the person requesting or directing the withdrawal of funds from an account has the authority to withdraw such funds. The Bank will not be liable if it considers that person's possession of the passbook and a properly authorized withdrawal request as satisfactory proof of authority to make the withdrawal unless you have previously notified the Bank that the passbook was destroyed, lost or stolen. You will hold us harmless for refusing to pay or release funds where the refusal is based on the failure to provide documents or authorization as required by us or if we suspect fraud or other unlawful acts. We reserve the right to require you to give the following advance written notice of your intention to make a withdrawal: seven-days advance notice on all certificate of deposit, passbook savings, and statement savings accounts. Payment by the Bank without requiring the seven-days advance notice will not constitute a waiver by the Bank of the right to require notice. The Bank also reserves the right to require withdrawals to be made only at the branch at which your Account is maintained.

**PREAUTHORIZED TRANSFER LIMITATIONS**
There are no limits on the number of withdrawals or transfers from your savings or money market Account when made in person, by mail (by check mailed to you), messenger, or at an ATM.

Federal regulations require us to limit to a total of six (6), the number of transfers and withdrawals, or a combination of such "... transfers and withdrawals, per calendar month or statement cycle (or similar period) of at least four weeks, to another account (including a transaction account) of the depositor at the same institution or to a third party by means of a preauthorized or automatic transfer, or telephonic (including data transmission) agreement, order or instruction, or by check, draft, debit card, or similar order made by the depositor and payable to third parties. A preauthorized transfer includes any arrangement by the depository institution to pay a third party from the account of a depositor upon written or oral instruction (including an order received through an automated clearing house (ACH)) or any arrangement by a depository institution to

pay a third party from the account of the depositor at a predetermined time or on a fixed schedule" (Regulation D, Section 204.2(d) (2)).

When we count the number of transactions for a statement period, we use the date that we post each transaction to your Account. This date may differ from the date you authorize, transfer, or write the transaction. Accordingly, a withdrawal or transfer conducted during one statement period may not be counted by us as having been made until the following statement period.

If you exceed these limits, we will notify you about the transaction violations and the need to stay within the limits, as well as assess a fee to cover the administrative costs associated with monitoring your Account transactions. Repeated violations will require us to convert your savings or money market Account to a transaction account (e.g., non-interest-bearing checking account). If we convert your Account, your new Account will be subject to the fees and other features/limitations governing the new account type.

You are not permitted to make preauthorized withdrawals or automatic transfers from your passbook savings Account, including telephone transfers or overdraft protection, or by use of an ATM card.

We prohibit the use of a savings account as the designated bill payment account when utilizing ProvidentConnect Online Banking and Bill Payment Services.

**TRANSFERS**

You may transfer funds from one of your Accounts with us to another of your Accounts at this Bank by telephone, via ProvidentConnect Online Banking, via The Provident Bank Mobile Banking Services, or by written instructions given to us. At our discretion, a fee may be charged for this service. Transfers of interest are permitted on all deposit accounts.

We may refuse any transfer request which is greater in number than the frequency permitted for your Account type, or which is for an amount greater or less than any transfer limitations.

**PAYMENTS**

You may direct the Bank to make a payment from any of your checking or money market Accounts by writing a check or from your statement savings or money market Account(s) by presenting a signed withdrawal slip on the form prescribed by the Bank, or from either your checking, money market, or statement savings Account(s) by EFT (including a ProvidentConnect Online Bill Payment transaction and Mobile Bill Pay as available/eligible) or by an ATM/debit card transaction. You must maintain a sufficient available balance in your Account to cover any check that you write or other withdrawal that you authorize. Funds from an item deposited do not become "available" for withdrawal/payment until it has been finally paid to the Bank and availability may vary due to the manner in which the deposit was made (e.g., in-person, via ATM/online banking/mobile check deposit/ACH, or other means). We reserve the right to refuse to cash or honor any check, withdrawal or other payment order by you to a person who is not a depositor of the Bank who presents such item(s) in person at one of the Bank's branches.

In general, payments and other items being paid/debited

from your account are processed in the following order: (1) electronic items such as ATM, point-of-sale (POS), and automated clearing house transactions; (2) internally generated items such as pre-authorized loan payments and account fees assessed; (3) items representing transactions processed at the teller window at a Provident branch; and (4) paper items such as checks, drafts, and other items received via cash letters from other banks and/or the Federal Reserve Bank. Checks are paid in the order received; if more than one (1) check is received on a business day, the checks are paid in check number order, which may differ than the order in which you issued them. Please note that all deposits and other credit items received are posted to your account prior to the previously listed debit items.

If we are presented with an item drawn against your Account that would be a "substitute check", as defined by law, except for an error or defect in the item introduced in the substitute check creation process, you agree that we may pay such item.

Payments to third parties from a passbook savings and certificate of deposit accounts are not permitted.

**INSUFFICIENT FUNDS, UNCOLLECTED FUNDS, AND OVERDRAFTS**
If you write a check or other order for more than the available balance in your Account, we may either pay it or return it unpaid. We will not be liable to you or any other person if we choose to pay such a check or other item. If we choose to do so and an overdraft is created, you agree to pay us the amount of the overdraft immediately.

You understand that we may honor a withdrawal request(s) that overdraws your account at our sole discretion. However, the fact that we may choose to honor a withdrawal request(s) that overdraws your Account does not obligate us to do so later. As such, you should not rely on us to pay overdrafts on your account regardless of how frequently or under what circumstances we have paid overdrafts on your Account in the past. We reserve the right to change our overdraft payment policies and practices on your Account without notice to you.

We may impose an Insufficient Funds, Unavailable Funds, or Overdraft fee for each check or other item that draws on unavailable funds or overdraws your Account, whether we pay or return your check or item unpaid.

If your Account has a sweep account arrangement, Consumer Overdraft Checking Line of Credit protection, or Overdraft Privilege$^{SM}$ feature (collectively referred to as "overdraft protection features"), checks or other items (debits) that would overdraw your Account may be honored up to your available balance, credit line or limit.

The Bank will pay your items using your available funds in the following order:

- your own funds on deposit;
- your sweep account funding arrangement;
- your Consumer Overdraft Checking Line of Credit;
- at our discretion, your available/remaining Overdraft Privilege limit.

Please note that the items will be paid against your Account in the order that they are received with priority

11

given to internal electronic items over paper items (e.g., checks), which may differ from the order that you conducted the transactions. This will affect the amount of any fees assessed.

The Provident Bank will authorize and pay overdrafts for ATM withdrawal transactions and everyday one-time debit card transactions via Overdraft Privilege ("ODP") service only if you have opted-in to that service. We will charge fees for overdrafts caused by ATM withdrawals or everyday one-time debit card transactions, provided that you have opted-in to ODP, up to the limits in number of and/or amount of such fees that are established by us from time-to-time at our sole discretion. You may opt-in and opt-out of ODP at any time by contacting our branch offices and/or Customer Contact Center.

Sweep account arrangements, consumer Overdraft checking line of credit or Overdraft Privilege limits will be utilized to cover overdrafts and associated fees provided the overdraft protection feature individually has a sufficient balance, credit line, or limit available to cover the total of each day's items and any associated service/insufficient/uncollected/overdraft fees. The Bank will not combine the available balance, credit line, and limits provided by each individual overdraft protection feature in order to cover an overdraft and/or associated fee.

If your checking Account is a joint Account, each owner will be responsible for any overdraft and any liability arising under the Consumer Overdraft Checking Line of Credit or Overdraft Privilege arrangement, regardless of which joint owner applied for the credit line, initiated the overdraft or benefited from the proceeds.

**PERIODIC STATEMENTS**
We will send you a statement for your applicable checking, savings, certificate of deposit (only when combined with statements provided for a checking or savings account) and Individual Retirement Account at the close of each statement period. Unless you make other arrangements with us, authorize us to provide your periodic statement electronically, and/or the feature of your Account includes/requires e-statements, your statements will be sent to you by regular mail. We will mail the statement(s) to the most recent address we have on file for you. When we place the statements in the mail or on ProvidentConnect Online Banking, they will be deemed delivered to you. If we send you statements monthly, the statements will reflect activity in your Account during that statement period, which will vary in length from 28 to 32 days.

Upon your request and/or authorization (or by the nature and design of specific account types), we will combine multiple account statements into one statement. By doing so, the activity shown on the statement for each Account depicted will be for the same time period.

By instructing us to combine account activity on one statement, all Account owners acknowledge and consent that in response to a subpoena or other legal process to release information about any one Account on the combined statement, we may release the entire combined statement.

You agree that you will look over your statements, check images and other materials sent with your statement as soon as you get them. You agree to look for alterations,

unauthorized transactions, unauthorized signatures, un-authorized electronic payments or ATM/debit card transactions, and missing endorsements. If you find any of these situations or find an error on your statement, you agree to notify us within sixty (60) days after we sent you the statement on which the error first appeared. You agree that if you fail to notify us of an unauthorized signature or alteration on an item within sixty (60) days after we make the statement available to you, you will be responsible for the unauthorized transaction and precluded from asserting a claim for it against us.

Whenever a statement is unclaimed or undeliverable because of your failure to provide adequate instructions or to notify us of a change in postal or e-mail address, we may discontinue sending statements and deny ATM or debit card access, until otherwise instructed by you. We will charge you a returned statement fee to cover the additional costs associated with our processing and handling of your statement. You will not receive a periodic statement for your passbook-type savings or certificate of deposit Account; your passbook will be the record of your Account balance, interest credited and transactions. You should review entries to your passbook as soon as possible and immediately notify us in writing if there is any unauthorized entries or errors.

## INTEREST COMPUTATION AND BALANCE INFORMATION

**Your Interest Rate and Annual Percentage Yield**
The interest rate and annual percentage yield are variable on all interest-bearing checking accounts, savings accounts (including club accounts), and money market accounts and may change at any time. The interest rate and corresponding annual percentage yield for variable rate accounts are not based on a particular index and are set at the Bank's discretion.

The interest rate and annual percentage yield on certificates of deposit (including Individual Retirement Accounts) are set at the time the account is opened and are fixed for the term of the certificate of deposit. The annual percentage yield for certificates of deposit assumes that interest will remain on deposit until maturity; a withdrawal will reduce earnings.

For all interest-bearing accounts, the initial interest rate and annual percentage yield are recorded in the account disclosure provided at account opening.

**The Balance on Which We Calculate Interest and When Deposits Begin to Earn Interest**
We use the daily balance method to calculate the interest on all interest-bearing accounts. This method applies a daily periodic rate to the balance in the account each day.

Interest on all deposits to a certificate of deposit account begins to accrue on the business day we receive the deposit. For other interest-bearing accounts, interest on cash deposits begins to accrue on the business day we receive the deposit, and interest on non-cash deposits begins to accrue on the business day or next business day following the day on which you deposit non-cash items (for example, checks).

Interest is paid on daily balances according to the terms disclosed to you at the time you opened your Account.

13

**When Interest is Credited and Compounded**

Interest on interest-bearing checking, savings, or money market accounts is compounded daily, credited on the last business day of the statement period, and is available on the first business day of the following statement period except for interest on Hassle-Free Holiday Club accounts, which is not available until the club year ends each October. Interest on certificate of deposit accounts is compounded daily and credited monthly and at maturity.

**How Interest is Paid**

Interest on all interest-bearing accounts is paid by: (1) crediting the accrued interest earned to the account; (2) crediting the accrued interest earned to another account with us; or (3) by distributing the accrued interest earned by check.

If you close your interest-bearing Account before interest is credited, you will be paid the accrued interest until the day of Account closing. If the balance in your Account reaches zero, we may deem your Account to have been closed by you.

**INTEREST REPORTING**

Interest payments will be reported to the IRS under the name and Tax Identification Number of the Account owner designated at Account opening and as set forth on the signature card, application, or other document. It is the responsibility of each Account owner to give the Bank their correct Tax Identification Number. Failure to provide the proper Tax Identification Number may make your Account subject to the assessment of a backup withholding penalty.

**REWARDS-TYPE CHECKING ACCOUNTS**

**Requirements**

Rewards-type checking accounts require that certain transaction requirements and other conditions, as disclosed at Account opening and that are subject to change from time-to-time at the Bank's sole discretion, be met in order to qualify for the rewards and other benefits of the account.

**Rewards Factor**

Rewards will be calculated based on the rewards factor in effect at the end of each statement period. This rewards factor is variable and may change at our discretion.

**Rewards Computation and Crediting**

Cash (or other type) rewards credited to your Account will equal the total amount of eligible transactions posted to and cleared through your applicable rewards checking Account each statement period multiplied by the rewards factor in effect at that time. Rewards will be posted to your applicable rewards-type checking Account as of the last business day of the statement period. Rewards will be redeemed, deposited and available on the first business day of the following statement period. See the account disclosure provided at account opening for detailed information pertaining to your rewards-type checking Account.

**CERTIFICATE OF DEPOSIT (CD) ACCOUNTS**

**Maturity and Interest Pay-Thru Date**

A maturity date will be established when you open your CD. Please see your CD passbook or account disclosure for

the maturity date. We will pay interest through the date of maturity.

**Transaction Limits**

You may not make additional deposits to your CD, unless specifically permitted under the terms of the CD you purchased. See the account disclosure provided to you when you purchased your CD for the actual terms of your Account.

**Notice of Approaching Maturity Date**

You will be notified in writing before the maturity date of your CD.

**Action at Maturity**

On the maturity date of your CD, unless you instruct us otherwise, your certificate of deposit will automatically renew for the same term and at the current interest rate and annual percentage yield in effect on the maturity date. Should you prefer any other action regarding your CD (e.g., renew for a different term, add/withdraw funds, transfer all or a portion of the principal balance to another type of deposit account, or redeem the CD), you must notify us by visiting one of our branch offices. At your option, you may withdraw funds from your CD without penalty within ten (10) calendar days after the maturity date. Interest may or may not continue to accrue and be paid during this ten (10) calendar-day period; see the account disclosure provided to you when you purchased your CD for specific information about interest accrual and crediting for matured CD accounts.

**Early Withdrawal**

You agree not to withdraw funds deposited to your CD Account until the maturity date, and we do not have to allow you to make an early withdrawal. If we allow you to withdraw all or any portion of the principal before the maturity date (partial redemption), an early withdrawal interest penalty will be imposed on the amount withdrawn. Please see the account disclosure provided to you when you purchased your CD for the basis of this penalty.

If the amount of the penalty exceeds the amount of accrued interest, we may deduct the excess penalty amount from the principal balance.

The early withdrawal penalty may be waived upon the death of an owner of the CD account provided that the early withdrawal request is made prior to the first renewal after the owner's death, or when the owner has been determined to be legally incompetent by a court or other administrative body. In addition, for retirement CDs only, the penalty is waived if there is a withdrawal from your CD after you become disabled or your withdrawal is part of a scheduled distribution to you under your retirement plan.

**Interest Rate and Annual Percentage Yields**

Interest rates and annual percentage yields offered on all new certificate of deposit accounts are set at the Bank's discretion. Current rate information is available at all branch locations, by calling toll-free 800.448.PROV (7768) or via the Internet at ProvidentNJ.com. Unless otherwise stated, the rate of interest paid does not vary during the CD term.

**HASSLE-FREE HOLIDAY CLUB ACCOUNTS**

When you open a Hassle-Free Holiday Club account, you

establish a periodic deposit amount or authorize a periodic transfer of funds from your existing checking or savings Account held at The Provident Bank to your Hassle-Free Holiday Club Account. Transfers will continue for up to 52 weeks.

The minimum periodic deposit or transfer is $5.00. If you do not have enough funds in your existing checking or savings Account to cover any scheduled transfer, we will transfer enough funds to cover all missed transfers as soon as the funds become available.

You are not permitted to make a partial withdrawal from your Hassle-Free Holiday Club Account. If you withdraw the entire balance at any time prior to the end of the club year, we will consider your Account closed. You will be paid the principal balance in the Account plus any interest accrued up to the close-out date but not yet credited to the Account. If you close the checking or savings Account from which transfers are made, you may still make periodic deposits in person at any branch office.

We will credit your designated checking or savings Account with the balance of your Hassle-Free Holiday Club Account, including interest earned, upon its annual maturity in October. Your Hassle-Free Holiday Club Account will automatically renew each club year until we receive notice from you not to renew the Account; notice must be provided by October 31 of the new club year.

**JOINT ACCOUNTS**
If your Account is in two or more names, it is a joint Account. Each joint owner has the right to withdraw any or all of the funds from the Account, close the Account, enter into agreements with us concerning the Account, and otherwise give us instructions regarding the Account.

Upon the death of any joint owner, the funds in the Account will pass to the surviving joint owner or owners. Applicable State law may require additional acts or documents before funds may be released.

If we receive conflicting instructions from the joint owners, we will have the right to refuse further payments except on a final court order or a release acceptable to us and signed by all joint owners. Each joint owner appoints the other as his or her agent to endorse checks and conduct business for the Account.

We may be required by law to remit funds held in your Account to satisfy a judgment, execute a levy or court order entered against an Account owner, or to satisfy other valid debts incurred by any owner of the Account. If we make payment following these rules, you release us from liability.

If in connection with the Account there is any liability owed to us, such as an overdraft, each joint owner will be individually responsible to us for the entire amount of the liability. If one or more of the joint owners owes us money that is due, we can, to the extent permitted by law, use the funds in the joint Account to pay the debt, regardless of who deposited the funds to the Account.

Once a joint Account is opened, one owner cannot remove another from title of the Account. Any joint owner may, however, close the Account by withdrawing all of the funds.

We may require you to close an Account in order to remove a joint owner, terminate a joint ownership, or change a pay-on-death or trust designation.

The joint owner whose address we have on our records for the Account agrees to provide to the other joint owner(s) any notice we send to that address, and notice to one joint owner shall be notice to all.

Refer to the "Lost Instruments" section of this Agreement for additional documentation requirements regarding lost passbooks and other instruments (e.g., Lost Passbook Affidavit).

**PAYABLE-ON-DEATH ACCOUNTS**
For an individual or joint account, you may choose to make your Account payable upon your death to one or more payable-on-death ("POD") beneficiaries. You can make your Account a POD account by instructing us to list each POD beneficiary on the Account and complying with applicable State law. The State in which your account is domiciled or in which the account owner(s) live may impose requirements that must be met to create a POD account. For example, you may have to include certain words or letters in the Account title to create a POD account, such as "payable on death," or "POD". You are solely responsible for meeting these requirements. We may treat an Account which names a POD beneficiary as a POD account. However, if the applicable requirements are not met, we may treat your Account as though there is no POD beneficiary.

During your lifetime, a POD Account belongs to you. You may close the Account, remove or add one or more POD beneficiaries, change the Account type or ownership, and withdraw all or part of the funds in the Account. When the Account owner or last joint owner dies, we may pay any funds remaining in the Account to the then-surviving (if any) POD beneficiary(ies), subject to our right to charge the Account for any amount a deceased owner, joint owner or POD beneficiary owes us. A POD beneficiary does not acquire an interest in the POD Account until after the death of the Account owner or the last joint owner. A POD beneficiary may acquire an interest in the Account at that time but only if the POD beneficiary is alive.

**TRUST ACCOUNTS**
Deposits may be made by one or two persons in trust for another (the "beneficiary"). Any action in connection with the Account, including withdrawals, may be made only by the trustee, or if there are two trustees, by both trustees, either trustee, or the survivor trustee. If we have not received any other written notice of the existence and terms of a trust upon the death of the trustee, or if there are two trustees, upon the death of both trustees, the funds on deposit will be paid upon request to the beneficiary, or to his or her legal representative.

**ENDORSING ITEMS**
If you cash or deposit a check, we are legally entitled to a valid and unqualified endorsement from you, and you give us the irrevocable right to place that endorsement on the check. Also, you agree not to give us any check that you have endorsed "without recourse". If you do, we can also place your unqualified endorsement on the check. We can also enforce against you any rights that an unqualified endorsement gives us. You will be liable for any losses or delays caused by a non conforming endorsement or material that

is on the back of a check when drawn that makes the Bank's endorsement illegible. Endorsement on all items must be contained on the back of the check within 1½ inches of the trailing edge of the check. You may identify the "trailing edge" of a check by viewing the check from the front; the trailing edge is the left edge of the check.

**RESPONSIBILITY FOR ENDORSEMENT**

The Bank will not be liable to you because an item you deposit to your Account, or that is cashed by you, is returned after the time set by applicable law due to a delay caused by markings on the back of the item in the space reserved for the depository bank's endorsement. You may be liable to the Bank for any loss or expense, including without limitation reasonable attorney's fees, it incurs due to markings on the back of the item in the space reserved for the depository bank's endorsement.

**USE OF FACSIMILE SIGNATURES**

If you use a stamp or other device to imprint a facsimile of your signature on a check, withdrawal slip or any other withdrawal form, you are fully responsible for the security over and use of the stamp or device and for payments made by us in reliance upon the presence of the facsimile signature on any item presented for payment regardless of who used the stamp or device. We reserve the right to reject any item containing a facsimile signature.

**STALE-DATED CHECKS**

The Bank, in its sole discretion, may pay or dishonor any stale-dated check (defined as any check that is dated more than six (6) months in the past) that is presented for payment. If no stop-payment order is in effect when we receive the stale-dated check for payment, we may elect to pay it. Normally, we will make this decision **without** consulting you. If you do not want us to pay a stale-dated check, you must place a stop-payment order on it.

**STOP-PAYMENT ORDERS**

If you do not want us to pay a check you have written, you can request that we place a stop-payment order on it by notifying us in person, by mail, by telephone, via ProvidentConnect Online Banking or by such other methods as we may make available to you. You may send written stop-payment orders to any of our branch offices. We will send you a confirmation notice for all stop-payment orders not made in person to one of our branch office personnel. You may stop payment on a check drawn on your Account only if we have not accepted, certified, made final payment on, or otherwise become accountable for the item, except to the extent otherwise required by law. We must be given reasonable opportunity to act on any stop-payment order before it can be considered effective. The effectiveness of any stop-payment order is dependent upon timing between receipt of the stop-payment order and receipt of the check for payment. The Bank will stop payment on a check within a reasonable period of time from receipt of the applicable stop-payment order. A "reasonable period of time" means the check is not presented for payment until the second business day following the business day the stop-payment order is received.

All stop-payment orders on checks are valid for six (6) months from the date the instructions to stop payment were given by you unless we receive instructions from you either correcting or canceling the stop-payment order. Because stop-payment orders are handled by computers,

to be effective, we are not obligated to notify you when a stop-payment order expires.

Your stop-payment order must be timely and must accurately describe the check by account number, date of check, payee name, amount, and check number.

There will be a charge for every stop-payment order we receive. If you have a joint Account, we will accept a stop-payment order from any joint owner or authorized signer, regardless of who signed the check. A release of the stop-payment order may be made only by the person who initiated the stop-payment order. If we fail to honor a proper and timely stop-payment order, we will not be liable for more than your actual loss, which may be less than the full amount of the check.

You may only stop payment on an official check if the item has been lost, stolen or destroyed.

If you stop payment on a check and we incur any damages or expenses because of the stop payment, you agree to indemnify the Bank for those damages or expenses, including reasonable attorney fees. When placing a stop-payment order, you assign to us all rights against the payee or any other holder of the check. In addition, you agree to cooperate with us in any legal actions that we may take against such persons. You should be aware that anyone holding the check may be entitled to enforce payment against you despite the stop-payment order.

Stop-payment order rules for electronic fund transfer differ from the rules for checks. See the Regulation E - Electronic Fund Transfer Disclosure for Consumer Accounts for rules and procedures regarding stop-payment orders for electronic fund transfers.

**UNPAID ITEMS**
If we decide not to pay a check or other item drawn on your Account, we may return the original, an image or a copy of the item or we may send an electronic notice of return and keep the original, image or copy of the item in our records. If we send an electronic notice of return, you agree that any person who receives that electronic notice may use it to make a claim against you to the same extent and with the same effects as if we had returned the original item.

**POSTDATED AND CONDITIONAL CHECKS**
You agree not to write/issue postdated checks (i.e., a check that is dated in the future) on your Account. We can assume that all checks presented are payable on demand. We will not be liable to you for paying a postdated check prior to its date.

The automated processing of the large volume of checks we receive prevents us from inspecting or looking for special instructions or "restrictive legends" on every check. Examples of restrictive legends placed on checks are "must be presented within 90 days" or "not valid for more than $1,000.00". We will not be bound by or obligated to comply with any restrictive legend, condition, notation or memoranda on a check unless we have specifically agreed in writing and in advance to do so. We are not responsible for any losses, claims, damages, or expenses that result from your placement of these or other special instructions on your checks.

19

**FRAUD AND SUSPICIOUS ACTIVITY**

It is critical for you to take care of your checks, promptly review your Account statement, and immediately report any suspicious or unauthorized activity to us. You accept responsibility for preventing and reporting forgeries, alterations, and other unauthorized uses of your checks or Accounts. You agree that the exercise of ordinary care will not require us to detect forgeries or alterations that could not be detected by a person observing reasonable commercial standards.

Since some types of fraud have become more difficult to detect, we may elect in some cases to make further inquiries about certain checks or other items that are issued/authorized and/or presented for payment against your Account. If we are unable to contact you or take other steps to determine with reasonable certainty that you authorized these payments, we may either pay the checks and other items or return them unpaid without any liability to you.

If at any time we believe that your Account may be or has been subject to irregular, unauthorized, fraudulent or illegal activity, we may, in our sole discretion, freeze the funds in the Account and in other Accounts you maintain with us, without any liability to you, until such time as we are able to complete our investigation of the Account and transactions. If we do freeze your Account funds, we will provide notice to you as soon as possible. We may also, in our sole discretion, terminate your access to ProvidentConnect Online Banking and Bill Payment, and Provident Mobile Banking Services (collectively referred to as electronic access) without any liability to you. We may not provide notice to you prior to freezing your Account or terminating your electronic access if we believe that such notice could result in a security risk to us or to the owner of the funds in the Account.

When you report that your checkbook, passbook, or Account information has been lost, stolen or otherwise obtained by an unauthorized person(s), or if you report actual or possible fraudulent activity on your Account(s) or if you otherwise report that your Account has been compromised, we will require that your Account(s) be immediately closed and a replacement Account(s) opened in order to protect you and the Bank from future losses. Should you refuse to do so, the Bank at its sole discretion may:

- require that you indemnify and hold us harmless should the fraudulent or unauthorized activity continue or other such similar acts occur in the future; or
- we may close your Account(s).

You agree to cooperate in all respects as allowed by law with any investigation of or action brought to apprehend and convict the person(s) responsible for any theft (including but not limited to family members or other persons known to you, and previously authorized persons), unauthorized withdrawals/transfers or other fraudulent or suspicious acts or attempted acts.

**SAFEGUARDING CHECKS, ACCOUNT INFORMATION, AND ACCESS DEVICES**

You agree to use care in safeguarding your unsigned checks against theft. Notify us at once if you believe your checks have been lost or stolen. If you are negligent in safeguarding your checks, you must bear the loss entirely yourself or share the loss with us (we may have to share some of the

loss if we failed to use ordinary care and if we substantially contributed to the loss).

It is your responsibility to protect the Account number(s) and electronic access devices (e.g., an ATM or debit card, online and mobile banking user name and password, etc.) we provide you or accept for use with your account(s). Do not discuss, compare, or share information about your Account number(s) with anyone unless you are willing to give them full use of your money. Your Account number can be encoded by thieves on a false demand draft which looks like and functions like an authorized check. If you furnish your access device and grant actual authority to make transfers to another person (e.g., a family member or coworker) who then exceeds that authority, you are liable for the transfers unless we have been notified that transfers by that person are no longer authorized. Your Account number can also be used to electronically remove money from your Account.

If you provide your Account number and/or our routing number to another person or entity either orally, electronically, in writing or by any other means for the purchase of goods or services, and they use that information to withdraw funds from your Account, we will deem that withdrawal authorized by you. If you authorize someone else to withdraw funds from your Account, by check or otherwise, we will not be liable to you for paying these withdrawals even if the amount of any withdrawal or the number of withdrawals exceeds your authorization.

**LOST INSTRUMENTS**
If your checks, savings passbook or certificate of deposit passbook are lost, stolen, or destroyed, you must notify the Bank immediately. If you first notify us orally, you must also promptly notify us in writing. We will place restrictions on withdrawal activity and will require you to comply with other reasonable requirements, including the transfer of the Account balance to a new Account, in order to protect you and the Bank against losses arising out of the misplacement, theft, or destruction of these instruments.

If the instrument is in more than one name, all parties must sign an affidavit regarding the lost instruments (e.g., Lost Passbook Affidavit) before any action to replace the instrument will be taken by the Bank.

**CLAIM OR LOSS**
If you claim a credit or refund because of a forgery, alteration, or any other unauthorized withdrawal, you agree to cooperate with us in the investigation of the loss, including giving us an affidavit containing whatever reasonable information we require concerning your Account, the transaction, and the circumstances surrounding the loss. You will notify law enforcement authorities of any criminal act related to the claim of lost, missing, or stolen checks or unauthorized withdrawals. We will have a reasonable period of time to investigate the facts and circumstances surrounding any claim or loss. Unless we have acted in bad faith, we will not be liable for special or consequential damages, including loss of profits or opportunity, or for attorney's fees incurred by you. You agree that you will not waive any rights you have to recover loss against anyone who is obligated to repay, insure, or otherwise reimburse you for your loss. You will pursue your rights or, at our option, assign them to us so that we may pursue them. Our liability will be reduced by the amount you recover or are entitled to recover from these other sources.

**ASSIGNMENT AND TRANSFER**

The assignment of a checking account is prohibited and will not be recognized. Savings, money market, and CD accounts are not negotiable and are not transferable except on our books. Savings and CD accounts (except Individual Retirement Accounts) may be assigned as collateral for a loan made by us, but an assignment will not be effective unless it is in a form acceptable to and acknowledged by us. Even if we acknowledge and consent to an assignment or transfer, we may require you to close the Account and that the new Account owner open a new account in their name. We may refuse to acknowledge or accept your attempted pledge, assignment or transfer of an Account or of any interest in an Account, including a notice of security interest.

**CLOSING AN ACCOUNT**

Either you or we may close your Account for any reason. You may close your Account at any time, and we may close your Account without disclosing the specific reason for our actions and without prior notice at any time. We will not be liable for dishonoring any item or other debit drawn on your Account and presented for payment after the Account has been closed. If we close your Account, we may mail you a notice and issue a check for the final balance to you.

If your Account reaches a zero balance, or if you apply for an Account but never deposit funds in it, we may either keep the Account open or close the Account without notice to you. If you close any consumer Account within six (6) months of it being opened, you will be charged an Early Account Closure fee; refer to our Personal Accounts and Service Fees brochure for the amount of this fee.

If your Account is closed, you will still be responsible for fees accrued and debits or overdrafts occurring as a result of transactions authorized and/or conducted by you before the Account was closed. This Agreement continues to govern matters related to your Account even after your Account is closed.

**CONVERTING AN ACCOUNT**

We may convert your Account to another type of account, revoke privileges or close your Account:

- if you make frequent transactions on a savings account as discussed in the "Preauthorized Transfer Limitations" section of this Agreement;
- if your Account frequently has debits against uncollected funds;
- if you use a personal account for business purposes; or
- when we consider it appropriate or necessary to do so.

If we discontinue your type of Account, we may convert your Account to another type of account. We may also convert your Account to another type of account based on our evaluation of how you use the Account. If we convert your Account, we will send you information about your new Account.

**SETOFF AND COLLECTION**

If you owe us money and that money is due, we can, on our own behalf and to the extent allowed by law, use the money from any or all of your Accounts or any Account in which you are a joint owner, to pay the debt. If we exercise this right, we will notify you immediately and inform you of

the amount we have taken from your Account(s). If we take any legal action to collect what you owe us, such as filing a lawsuit, you will be responsible for our reasonable expenses, including attorney's fees.

Many Federal payments to consumers, including Social Security benefits and Supplemental Security Income benefits, are protected from attachment under Federal law. This means that your creditor generally may not take these funds from your Account. However, by opening your Account, you agree that we can take funds, including Federal payments, from your Account to satisfy obligations, such as fees and overdrafts that you may owe us.

### SERVICE FEES AND CHARGES

Your Account may be subject to monthly service or maintenance fees, minimum balance fees, as well as miscellaneous fees and other charges. These fees and charges are listed in the Personal Accounts and Service Fees brochure, and are subject to change. See the Account disclosure and/or Personal Accounts and Service Fees brochure regarding the fees that apply to the specific type of Account you opened. Some fees can be avoided if you maintain sufficient balances or comply with certain transaction requirements or limitations, as described in your Account disclosure. You agree to pay the applicable fees and charges disclosed from the day your Account is opened. Fees and other charges will be paid from your Account; we will charge them automatically and without any specific notice to you.

We determine the amount of each fee charged based upon many factors, including the direct and indirect costs and expenses to deliver the product or service, the value we offer, deterrence of misuse of an account, profitability and soundness of the Bank.

If the payee of a check or other item drawn on your Account presents the check or other item for payment at the Bank, we may impose a fee upon a non-Provident payee for the service of cashing the check or other item. You agree that the imposition of such a fee shall not be considered to be a wrongful dishonor of the check or other item.

### Balance Requirement and Service Charges

Computations for minimum balances and service charges are based on: (1) the average daily balance method for the period when calculating requirements concerning most checking and savings accounts. The average daily balance is calculated by adding the full amount of principal in the account for each day of the period and dividing that figure by the number of days in the period; and (2) for the Provident Platinum Checking account only, these balance calculations include the current principal balance in your related certificate of deposit, Individual Retirement Account, mortgage loan, home equity loan or line of credit, personal loan or line of credit, and/or overdraft line of credit on the day that the calculation is made.

### NOTICES

Written notices, orders or instructions given by you to the Bank are effective upon receipt by us. (Note: See the section titled "Stop-Payment Orders" for restrictions regarding this general statement.) Written notices, orders or instructions given by the Bank to you are effective upon being deposited in the mail to your last known address or provided to you electronically only if you have agreed to accept/receive such notices electronically in accordance with the Electronic

23

Signatures in Global and National Commerce (E-SIGN) Act. Notice to any one owner of an account is notice to all owners and/or authorized signers of that account.

When we make a change affecting your rights and obligations, a notice of change will be delivered or otherwise made available to you. In some cases, we may post a notice of change in our branch offices or on our website. Otherwise, we mail the notice to you at the address we currently have on file for your statements or, if you have agreed on this method, provide it to you electronically. We may also provide notice to you as a message on your Account statement or as an insert with your Account statement.

If a notice of change to this Agreement is returned to us as being undeliverable or if we stop sending notices to you because notices or statements previously sent to you were returned to us as being undeliverable, you understand that the notices are available to you through our Customer Contact Center (800.448.PROV (7768)). You agree to that method of delivery and that changes covered in these notices are still effective and binding on you.

In the event that any notice, statement, or other communication sent to you is returned to us as being undeliverable, including those sent via electronic mail as previously agreed to by you, we:

- will destroy such communications along with any accompanying checks or other items;
- will stop sending communications to you, including statements, until a new address is provided to us;
- may place withdrawal and/or other transaction restrictions, including temporarily deactivating your ATM/debit card or online banking/bill payment/mobile banking service, on your Account(s); and
- will assess a fee for handling of your returned statements, notices, or other communications and the processing restrictions that we place on your Account(s) as a result of the communication sent to you being returned as undeliverable.

**CHANGE OF NAME, POSTAL, AND E-MAIL ADDRESSES**
You are responsible for notifying us of any change in your name. Unless we agree otherwise, name changes must be made in writing by the affected Account owner and must be supported by a legal document denoting the change and government-issued identification acceptable to us showing the name change.

You must promptly notify the Bank in writing of any change of your address. You will be required to provide identification information so that we can verify the authenticity of the change notice. Address change requests received through e-mail or via our website will not be honored.

Informing the Bank of your name and/or postal address change on a check order form is not sufficient.

It is the responsibility of each account owner who's Account requires establishing a ProvidentConnect Online Banking relationship through which periodic account statements will be delivered to provide The Provident Bank with a valid e-mail address. It is also the responsibility of the account owner to inform The Provident Bank of any and all e-mail address changes. Failure to provide this information may result in undelivered e-statements, account disclosures and

notice(s), as well as forfeiture of qualification for Account features and benefits.

## CHANGE IN TERMS NOTIFICATION

We may change this Agreement at any time. If the change will reduce the annual percentage yield on your Account or adversely affect you, we will give you notice before the effective date of change (usually not less than 30 days prior to the effective date of the adverse change for consumer accounts). This notice requirement does not apply to a change in the interest rate and annual percentage yield on a variable rate account. You agree to provide us a current postal and/or e-mail address to which all correspondence will be addressed. When there is any other change to the information disclosed in this Agreement, we will post a notice in our branches, notify you by mail via a separate notice or an advisory message on your Account statement or a statement insert, or notify you via electronic mail if you have previously agreed to this delivery method.

## ACCOUNT VERIFICATION

We may, at our sole discretion and to the extent permitted by law, obtain credit reports and otherwise verify information supplied by you, either directly or through an outside agency retained by us. If you ask, we will tell you whether or not a credit report was requested and, if one was requested, we will give you the name and address of the credit reporting agency that furnished the report.

## CUSTOMER'S WAIVER OF NOTICE

By opening your Account and entering into this Agreement you waive the right to receive any notice of non payment, dishonor, or protest regarding any items credited to or charged against your Account.

## STANDARD OF CARE

We use automated systems that do not rely on sight review in the processing of checks in order to handle a high volume of these items at a lower cost to you. This process and compliance with expedited funds availability laws preclude us from examining all inclearing checks for proper endorsement, authorization, and/or counterfeit, fraudulent or other suspicious activity. Although we may visually review a sample of checks and other items from time-to-time, reasonable commercial standards do not require us to do so.

We select some checks for review on the basis of certain criteria that change from time-to-time. This means that most checks are processed on the basis of the Magnetic Ink Character Recognition (MICR) line printed along the bottom edge of the check, and are not individually examined for dates, maker signatures, legends or endorsements. You agree that we will have exercised ordinary care if we examine only those items that we have identified according to the criteria that we may establish in our sole discretion for inspection.

If we do visually review any check or other item, we may disregard any restrictive instructions or notations, such as an instruction to permit withdrawals only upon more than one signature. We may return the item unpaid if, in our sole opinion, it does not bear a signature matching any specimen signature we have on file for your Account. You agree, however, that we will not be liable to you for honoring any check or other item bearing a signature that, in our sole opinion, resembles the specimen signature on file with us.

You agree that, to the extent that such systems and processing are consistent with general banking practices, their use will constitute ordinary care and we may not be liable to you for forgeries or alterations not detected by such systems. You also agree that the exercise of ordinary care will not require detecting forgeries or alterations that could not be detected by a person observing reasonable commercial standards.

**Electronic Check Conversion and Similar Transactions**
An electronic check conversion transaction is a transaction where a check or similar item is converted into an electronic fund transfer as defined in the Electronic Fund Transfers regulation (Federal Regulation E). With these transactions, the check or similar item is either removed from circulation (truncated) or given back to you. As a result, we have no opportunity to review the check or examine the signatures on the item. You agree that, to the extent that our processing of such items is consistent with general banking practices, their use will constitute ordinary care and we may not be liable to you for forgeries or alterations occurring with such transactions.

**COMPLIANCE**
You agree to comply with applicable laws and regulations. You agree not to use your Account or related services for any illegal transactions or activity, including those prohibited by the Bank Secrecy Act, the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA PATRIOT) Act, and the Unlawful Internet Gambling Enforcement Act.

You agree to indemnify us from every action, proceeding, claim, loss, cost and expense (including attorney's fees) suffered or incurred by us due to any United States or foreign government entity seizing, freezing or otherwise asserting or causing us to assert control over any Account or funds in an Account of yours (or ours) when purportedly caused by, or arising out of, your action or inaction. This will apply whether or not such action is ultimately determined to be authorized under the laws of the United States or its territories, or of any foreign jurisdiction. We are not required to inquire or determine the authority of any action taken by the United States or foreign government entity prior to acceding to any legal process initiated by it.

Your agreement to comply with applicable laws and regulations includes United States economic sanction laws and regulations issued by the Office of Foreign Assets Control (OFAC) of the U.S. Department of the Treasury, and Executive Orders issued by the President of the United States of America.

**LIMITS ON LIABILITIES**
The Bank shall not be liable for delays, errors or losses occurring as a result of causes beyond its control. The Bank shall not be liable for special, incidental or consequential damages.

**ADVERSE CLAIMS**
In the event of a dispute over access to or ownership of your Account, we may choose not to act until we receive a court order, indemnification acceptable to us, or a release acceptable to us and signed by all parties to the dispute. We may deduct from your Account any costs and expenses, including reasonable attorney's fees, which we incur as a result of such a dispute. Any garnishment or levy against

your Account is subject to our prior right of setoff (see "Set-off and Collection" section) and security interest.

**INDEMNITY**

If you ask the Bank to follow instructions that in the judgment of the Bank expose it to potential liability or that are contrary to law or prudent banking practices, the Bank may refuse to follow your instructions or may require adequate security, including but not limited to the execution of a Hold Harmless Agreement, to protect it from all losses and expenses incurred in following your instructions.

**LEGAL PROCEEDINGS**

If your Account becomes involved in legal proceedings, your use of it may be restricted. We will, to the extent required and/or permitted by law, notify you in writing whenever such a restriction (such as an attachment) is placed on your Account.

We may hold and turn over funds or other property to the court or creditor as directed by the legal process, subject to our right of setoff and any security interest we have in the funds or other property. We may not pay interest on the funds during the period we hold them pursuant to legal process. If we hold or turn over funds, we may without any liability to you, return checks and other items unpaid and refuse to permit withdrawals from your Account. If the legal process applies to a time deposit account, we may charge the applicable early withdrawal penalty for funds taken from the time deposit.

The Bank will charge your Account a fee for each legal process. You agree to pay our fees and any expenses incurred (including administrative expenses) in responding to any legal process related to your Account, such as expenses for research and copying documents. The fees and expenses may include attorney's fees. We may deduct these fees and expenses from any of your Accounts without prior notice to you.

We may produce documents held at or provide access to property that is located in any of our facilities or any facility operated by a third party on our behalf, even if the facility is not designated as the place to be searched in the legal process. We have no liability to you if we accept and comply with the legal process as provided in this section or by law.

**POWERS OF ATTORNEY/APPOINTMENT AND PAYMENT TO AGENTS**

You may decide to appoint someone to act for you as your agent or attorney-in-fact ("agent") under a power of attorney. Please note that the form must be satisfactory to us in our sole discretion and unless prohibited by law, we may refuse, with or without cause, to honor powers of attorney that you grant to others.

Upon acceptance of a power of attorney form that we believe was executed by you, we will act on instructions we receive under that form without any liability to you. You agree to reimburse us for all claims, costs, losses and damages that we incur in accepting and acting on any power of attorney form that we believe you executed.

We may pay any funds deposited in your Account to your agent or upon the order of your agent. When we accept a power of attorney, we may continue to recognize the authority of your agent to act on your behalf without question

until we receive written notice of revocation from you or notice of your death or incapacity and have had a reasonable time to act upon it. We will not be liable for action in accordance with the most current documentation if we have not received such notice.

We may require your agent to present the original form and refuse to act on a copy. In some cases, we may require that your agent confirms in an affidavit that the power of attorney has not been revoked or terminated or that you register the power of attorney with the appropriate recording authorities. We may restrict the types or amounts of transactions we permit your agent to conduct.

The authority of your agent to receive payments, transact on or otherwise make changes to your Account generally terminates with your death or incapacity, unless the document creating such agency provides, in accordance with applicable law, states that the agent's authority continue in spite of your incapacity.

**ACCOUNT AND OTHER RECORDS**
We may in our discretion retain records in any form, including paper, film, fiche, digitalized or other electronic medium. If we are not able to produce the original or a copy of your signature card or any other document relating to your Account or service, our records (including our electronic records) will be deemed conclusive. If there is a discrepancy between your records and our records, our records will be deemed conclusive.

**AMENDMENTS**
The Bank reserves the right to modify the contract terms in this Agreement and the signature card or other account documents (as applicable) at any time. The Bank may also change the interest rate on variable rate accounts, the (1) service, (2) balance requirement, (3) maintenance, and (4) other fees associated with your Account, as well as branch banking hours from time-to-time. When the Bank posts a notice of the change in the lobby of its branches or when the Bank delivers (i.e., mails or e-mails) to you a written notice in accordance with applicable laws and regulations, each of the changes will be binding upon you and the Account.

**CONTINUING EFFECT**
If any of the terms and conditions of this Agreement are determined by a governmental authority or court of law to be ineffective, the rest will continue to be in effect.

**BUSINESS DAY**
Every day is a business day except Saturdays, Sundays and Federal holidays. If you make a deposit before 3:00 PM EST, or such later time that may be posted in each branch, on a business day that we are open, we will consider that day to be the day of your deposit. However, if you make a deposit after these cut-off times, on a Saturday, or on a day that we are not open, we will conclude that the deposit was made on the next business day we are open. Deposits of electronic items/images made through The Provident Bank's Mobile Banking Services – Mobile Check Deposit must be accepted for processing before the day of deposit is determined.

**BANKING HOURS**
The Bank will be open for business during hours that are determined by us. Banking hours are posted at each branch and can be obtained by calling us at 800.448.PROV (7768) or via the Internet at ProvidentNJ.com.



800.448.PROV
(800.448.7768)
**ProvidentNJ.com**



 Member FDIC

PV-1626 (09/14)

# FUNDS AVAILABILITY POLICY

$5,000 will not be available until the second business day after the day of your deposit.

Funds deposited to open an account through our online account opening system (such as a credit card advance or a transfer from an account at another financial institution) will be held for five (5) business days from the transfer date regardless of whether the account remains open or is closed by you or us.

Funds from all other check deposits (including payroll checks) will be available on the ninth business day after the day of your deposit.

## Holds on Other Funds (Check Cashing)

If we cash a check for you that is drawn on another bank, we may withhold the availability of a corresponding amount of funds that are already in your account. Those funds will be available at the time funds from the check we cashed would have been available if you had deposited it.

Our general policy is to cash checks only if your account balance is adequate to cover the amount of the check being cashed.

## Holds on Other Funds (Other Account)

If we accept for deposit a check that is drawn on another bank, we may make funds from the deposit available for withdrawal immediately but delay your ability to withdraw a corresponding amount of funds that you have on deposit in another checking or savings account with us. The funds in the other account would then not be available for withdrawal until the time periods that are described elsewhere in this disclosure for the type of check that you deposited.

If you want Provident Bank to transfer the availability delay to another checking or savings account, you may do so by affixing the account number to the back of the check directly below the endorsement.

## Foreign Checks

Checks payable on foreign banks not doing business in the United States, its territories and possessions or who have not been assigned a routing number by the Federal Reserve, are accepted for deposit, subject to collection. You will be given a receipt for such check(s). The deposit will be credited to your account after we receive payment for the check(s) from the foreign bank; an acknowledgment will be sent to you when your account is credited.

## Endorsements

Part of the Expedited Funds Availability ("Act") is to standardize check endorsements. As a depositor of a check, this Act limits the location of your endorsement to the top 1½ inches at the trailing edge of the check. For endorsement purposes, the trailing edge is on the backside of the check directly behind where the phrase "Pay to the Order" is printed. This is where most endorsements are usually placed.

Any marks outside of the top 1½ inches on the back of the check may obscure the Bank's information and can ultimately result in either a delay in returning the check or the forfeiture of your right to the recovery of those funds.

## Questions

Should you have questions concerning this policy or the availability of funds from items deposited into your account(s), please call our Customer Contact Center at 800.448.7768 or talk to a Customer Service Representative at your local Provident branch.



Commitment you can count on.

**Provident.Bank**
800.448.7768





Equal Opportunity Lender
Equal Housing Lender
Member FDIC

PVR-1614 (03/19)

Member FDIC

Commitment you can count on.

# PROVIDENT BANK FUNDS AVAILABILITY POLICY REGULATION CC DISCLOSURE

## Introduction

Provident Bank's "Funds Availability Policy" applies to all deposit/deposited items including cash, checks, electronic payments, etc. and is intended to be a guide for determining when funds electronically deposited will be available for withdrawal and/or electronic transfer within Provident Bank ("Provident", "Bank" "we" or "us") or to another financial institution, or the payment of checks and other items drawn on your account. Since it takes time to ascertain whether deposited items will be paid by drawer bank, most deposits require some time to "clear" (i.e. time for Provident Bank to receive payment from the drawer bank). It is our policy to delay availability of funds from some deposits while this process is on going. During this clearing time, you may not withdraw the funds from your deposits in cash, transfer the funds to another financial institution, and we will not use the funds to pay checks or electronic fund transfers that are presented against your account.

**Note: You are responsible for the validity of deposited items even after we have made the funds available to you.**

Should any check or item be returned to us unpaid for any reason (including the amount or content of items), your account will be charged for the amount of the item (plus our return item fee) as you are obligated to repay us. Should there be insufficient funds on deposit to cover the returned item, Provident will require repayment of these funds from other deposits held by you at Provident or through other means.

**Fraud Alert: We advise you to be wary of checks received via contacts made through the internet or otherwise not in person as these items are often times counterfeit or fraudulent.**

## Determining the Availability of Deposits

### Our Business Day Defined

The length of the funds availability delay is counted in business days from the day of your deposit. Every day is a business day except Saturdays, Sundays and Federal Holidays.

The length of the funds availability delay varies depending on the method of deposit and type of deposited items as explained below.

### In-branch Deposits

If you make a deposit on a business day that we are open, we will consider that day to be the day of your deposit. However, if you make a deposit on a Saturday or on a day that we are not open (such as through a night depository), we will conclude that the deposit was made on the next business day we are open.

### ATM Deposits

Deposits of cash or check(s) can be made at select Provident owned and/or operated Automated Teller Machines (ATMs). If you make a deposit or conduct a transaction at an (ATM) owned/operated by Provident after 3:00 PM ET the "day of deposit" will be the next business day. ATM deposits will be granted the availability described herein for the type of items deposited.

### Mobile Check Deposits

Funds from check deposits converted to electronic items through the Provident Bank's Mobile Banking/Mobile Check Deposit service will be available for withdrawal and/or internal/external transfer via our Mobile Online Banking, Mobile Bill Pay, and/or any other means on the first business day following the business day that your check/electronic item was approved for processing. You will be informed when your check/electronic item has been approved for processing via a message sent to you via the email address you provided to us.

## Funds Availability

Funds from the following deposits are available on the business day we receive your deposit:

- Electronic payments deposited through an Automated Clearing House (ACH) credit (e.g. recurring payroll deposits and federal government deposits such as Social Security benefits)

- U.S. Treasury checks that are payable to you

- Wire Transfers

- Checks drawn on Provident Bank

If you make the deposit in person to one of our branch employees, funds from the following types of deposits are also available on the business day we receive your deposit:

- Cash

- New Jersey and Pennsylvania state and local government checks that are payable to you

- Cashier's, certified, bank official, and teller's check that are payable to you

- Bank money orders that are payable to you

- U.S. Postal Service money orders that are payable to you

- Federal Reserve Bank checks and Federal Home Loan Bank Checks that are payable to you

- Traveler's checks issued in U.S. currency that are payable to you

- Dividend checks that are payable to you

- Payroll checks that are payable to you. (Note: A payroll check is defined as a computer-generated check drawn on a business account with pre-printed wording identifying it as a payroll check.)

**New Account Holders: See restrictions under Special Rules for New Accounts.**

If you do not make your deposit in person to one of our branch employees (e.g. if you mail the deposit or use a Provident owned/operated ATM), funds from the deposit types listed immediately above will be available on the first business day after the day we receive your deposit. See Mobile Check Deposits section for availability of funds through Mobile Banking Services.

It is Provident's policy to make funds from all other check type deposits available as follows:

- The first $200 from a deposit of checks will be available on the business day of your deposit.

- The remaining funds will be available on the first business day after the day of your deposit.

For example, if you deposit a check of $700 on a Monday, (before cutoff time) $200 of the deposit is available on Monday. The remaining $500 is available on Tuesday.

## Electronic Funds Transfer (Extended Holds)

Except as described in the section 3 entitled "Funds Availability" and "Special Rules for New Accounts", electronic fund transfers (as described in the Electronic Fund Transfer Act) received (or deposit from a financial institution through Provident's online banking, Provident will be available for withdrawal or internal/external transfer via our available banking service on the first business day following the day of your deposit.

## Longer Delays May Apply

In some cases, we will not make all of the funds that you deposit by check available at the times provided within this policy.

Depending on the type of check that you deposit, funds may be available until the second business day after the day of your deposit. However, the first $200 of your deposit will be available on the first business day after the day of your deposit.

If we are not going to make all funds from your deposit available at the times provided within this policy, we will notify you at the time you make your deposit. We will also tell you when the funds will be available. If your deposit is not made directly to a branch employee, or we decide to take this action after you have left the premises, we will mail you an extended hold notice by the time we receive your deposit.

In addition to the above, funds you deposit by check may be delayed for a longer period under the following circumstance:

- We believe a check you deposit will not be paid.

- You deposit checks totaling more than $5,000 on any one day.

- You redeposit a check that has been returned unpaid.

- You have overdrawn your account repeatedly in the six (6) months.

- There is an emergency such as failure of computer communications equipment.

We will notify you if we delay your ability to withdraw funds for any of the reasons listed immediately above and we will tell you when the funds will be available. They will generally be available no later than the fifth business day after the day of your deposit.

Whatever the case may be, if you will need the funds from deposit right away, you should ask us when the funds will be available by calling 800.448.7768 or by speaking to one of our branch customer service representatives.

## Special Rules for New Accounts

If you are a new customer or if your account is not opened in person via our online account opening system, the following special rules will apply during the first thirty (30) calendar days your account is open. Funds from electronic direct deposits (such as payroll or federal government benefit payments) to your account will be available on the day we receive the deposit. Funds from deposits of cashier's, certified, teller's, travelers, and federal, state and local government checks will be available on the first business day after the day of your deposit if the deposit meets certain conditions. For example, the checks must be payable to you. The amount of funds over $5,000 will be available the ninth business day after the day of your deposit. If your deposit of these checks (other than U.S. Treasury checks) is not made in person to one of our branch employees, the first

## CONSUMER IDENTIFICATION PROGRAM



**Provident** BANK

Commitment you can count on.℠

Member FDIC

---

- TransUnion
  Fraud Victim Assistance Division
  P.O. Box 6790
  Fullerton, CA 92634-6790
  www.transunion.com
  1.800.680.7289

3. Cancel all accounts that have fraudulent activity or are at risk.

4. Contact your local law enforcement agency.

5. Contact the U.S. Postal Service if you know or suspect your mail has been stolen.

6. Keep detailed records of any theft of your identity and of your activities to resolve the theft including logs of the following:

• The date, time, and amount of any unauthorized activity on your accounts;

• The date, time, duration, and cost of any phone calls;

• The date and cost of any mailings.

---

800.448.PROV
(800.448.7768)
**ProvidentNJ.com**

**Provident** BANK
Commitment you can count on.℠

Member FDIC



PV-1615 (04/14)

**The government did its part:**

The events of September 11, 2001 resulted in legislation designed to help America fight terrorism. The government created this legislation to provide our country with stronger surveillance power, tougher criminal laws against terrorism, and improved national intelligence. The legislation affected the financial industry and its anti-money laundering laws. By making these changes, the government hopes to stop large sums of money from being at the disposal of terrorists.

**Now, you can do your part to support these efforts:**

All financial institutions are required to more carefully verify the identity of their account owners, loan applicants, parties to trusts, and purchasers of investment products. To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.

**What this means to you:**

When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents or ask you additional questions at the time of your transaction. We also may ask for the identifying information (e.g. Social Security Number, driver's license number, etc.) for signatories on business accounts, government/municipal accounts, and community group accounts. You can assist in the effort to uncover suspicious activities before they threaten our nation's security by providing the required proof of identification and answering these questions.

**What will happen with the information you provide us:**

The information we request will primarily be used to provide you with the products and services you requested, but will also assist in the nation's effort to fight against terrorism. Regulations require that the information you provide us when opening an account or adding a signer to an existing account be verified using one or more methods. For instance, when opening an account or adding a signer, we may compare it against public information databases to verify that the information provided is current, accurate, and valid. This use is consistent with our Privacy Policy (previously provided to you) and will not change our current information-sharing practices. This means that you can be confident that the information you provide us will remain secure, while making sure that our country's financial institutions are free from misuse by terrorists and money launderers.

*Thank you for doing your part!*

**Safeguard yourself from fraud:**

There's increasing evidence that credit card, debit card, and similar fraud is a major source of funding terrorists. By obtaining personal information about you – such as your debit or credit card numbers, personal identification numbers (PINs), deposit account number, Social Security Number, and driver's license number – terrorists can unlawfully make withdrawals or purchases in your name. In doing so, they not only take what doesn't belong to them, which can damage your credit and reputation in the process, but they may be funding terrorism.

To help prevent becoming a victim of fraud:

- Keep your credit cards, debit cards, PINs, checks, deposit account numbers, Social Security Number, driver's license number, and other personal information in a safe place.

- Keep deposit/withdrawal slips as well as credit and debit card receipts where they will be safe, and always shred them before discarding.

- Shred expired credit/debit/ATM/identification cards, credit solicitations, credit card statements, financial institution statements, utility bills, insurance information, medical bills, and investment updates before discarding them.

- Don't put your trash out until shortly before it will be picked up.

- Don't put mail in your curbside mailbox until shortly before it will be picked up.

- Take your mail out of your curbside mailbox as soon as possible after it is delivered. If you're traveling, have the U.S. Postal Service hold your mail or have someone you trust pick it up daily.

- Limit the information on your checks to only that which is absolutely required, and don't carry any more credit or debit cards than necessary.

- Don't give your personal information to anyone in person, over the telephone, or over the Internet unless you have a very good reason to trust them.

- Don't provide your personal information to any web site that doesn't use encryption or other secure methods to protect it.

- Use a firewall if you have a high-speed Internet connection. This software can be purchased from most software retailers.

- Don't use PINs or other passwords that are easy to guess such as family birth dates or your pet's name.

- Examine your credit card and bank statements immediately upon receipt to determine whether there are any unauthorized transactions. Immediately report unauthorized transactions to the applicable financial institution.

- Make a prompt inquiry if bills or bank statements are not received in a timely manner as this could mean that they are being diverted by an identity thief.

- Obtain copies of your credit report annually from each of the three major credit-reporting agencies (shown later on in this brochure) to make sure it is accurate and that the credit accounts reported for you are legitimate.

You may also wish to do the following:

- Request to not receive any preapproved offers of credit by calling 1.888.5OPT.OUT.

- Ask to be removed from national direct mail lists by writing to the DMA Mail Preference Service at P.O. Box 643, Carmel, NY 10512. Include your name and address.

- Ask to not receive telephone solicitations from national marketers by calling 1.888.382.1222 or online at FTC website www.donotcall.gov.

**What to do if you discover that you're a victim of fraud:**

1. Contact the Federal Trade Commission at:

- www.ftc.gov
- 1.877.438.4338, or
- Federal Trade Commission
  Customer Response Center
  600 Pennsylvania Avenue NW
  Washington, D.C. 20580

2. Write to or call the three major credit reporting agencies to place a fraud alert on your credit report and request a copy of your credit report:

- Equifax Information Services LLC
  P.O. Box 105069
  Atlanta, GA 30374-5069
  www.equifax.com
  1.800.525.6285

- Experian
  P.O. Box 9554
  Allen, TX 75013-9554
  www.experian.com
  1.888.397.3742


BANK
Member FDIC

rev. 11/16

| FACTS | WHAT DOES **PROVIDENT BANK** DO WITH YOUR PERSONAL INFORMATION? |
|---|---|

| **Why?** | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
|---|---|

| **What?** | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br><br>■  Social Security number and **Income**<br>■  **Assets**          and **Employment Information**<br>■  **Transaction History**   and **Credit History** |
|---|---|

| **How?** | All financial companies need to share **non-public** personal information to run their everyday business. In the section below, we list the reasons financial companies can share their **non-public** personal information; the reasons **Provident Bank** chooses to share; and whether you can limit this sharing. |
|---|---|

| Reasons we can share your personal information | Does Provident Bank share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes—** such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes—** to offer our products and services to you | Yes | No |
| **For joint marketing with other financial companies** | Yes | Yes |
| **For our affiliates' everyday business purposes—** information about your transactions and experiences | Yes | No |
| **For our affiliates' everyday business purposes—** information about your creditworthiness | Yes | No |
| **For our affiliates to market to you** | Yes | Yes |
| **For nonaffiliates to market to you** | No | We don't share |

| **To limit our sharing** | ■  Call 800.448.7768  —  our menu will prompt you through your choice(s)<br><br>**Please note:**<br>If you are a *new* customer, we can begin sharing your information  30  days from the date we sent this notice. When you are *no longer* our customer, we continue to share your information as described in this notice.<br><br>However, you can contact us at any time to limit our sharing. |
|---|---|

| **Questions?** | Call 800.448.7768 |
|---|---|

**Page 2**

## Who we are

| | |
|---|---|
| **Who is providing this notice?** | Provident Bank and its wholly owned subsidiaries PFS Insurance Services, Inc. and Beacon Trust Company. |

## What we do

| | |
|---|---|
| **How does Provident Bank protect my personal information?** | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. Access to your personal information is limited to those employees who need to know the information to provide products and services to you. |
| **How does Provident Bank collect my personal information?** | We collect your personal information, for example, when you<br>■ Open an account  or Deposit money<br>■ Apply for a loan  or Provide account information<br>■ Seek advice about your investments<br>We also collect personal information from others, such as credit bureaus, affiliates, or other companies. |
| **Why can't I limit all sharing?** | Federal law gives you the right to limit only<br>■ sharing for affiliates' everyday business purposes—information about your creditworthiness<br>■ affiliates from using your information to market to you<br>■ sharing for nonaffiliates to market to you<br>State laws and individual companies may give you additional rights to limit sharing. |
| **What happens when I limit sharing for an account I hold jointly with someone else?** | Your choices will apply to everyone on your account - unless you tell us otherwise. |

## Definitions

| | |
|---|---|
| **Affiliates** | Companies related by common ownership or control. They can be financial and nonfinancial companies.<br>■ *Our affiliates include financial companies such as PFS Insurance Services, Inc. and Beacon Trust Company.* |
| **Nonaffiliates** | Companies not related by common ownership or control. They can be financial and nonfinancial companies.<br>■ *Provident Bank does not share with nonaffiliates so they can market you.* |
| **Joint marketing** | A formal agreement between nonaffiliated financial companies that together market financial products or services to you.<br>■ *Our joint marketing partners include: LevLane Advertising, Inc., Affinion Group, BV Card Assets, LLC, Generations Gold, Inc., Deluxe Corp., FirstData Corp.* |

## Other important information

This Privacy Policy Notice applies to products and services used primarily for personal, family or household purposes (non-business purposes).  We reserve the right to change this Privacy Policy Notice and any of the practices described within this policy at any time.   The examples provided in this Privacy Policy Notice are not intended to be all-inclusive.   Hearing-impaired customers, please call (TDD) 1.800.448.2823 to limit the sharing of your information.

**Electronic Funds Transfer Disclosure For Consumer Accounts (Regulation E)**

**INTRODUCTION**

Provident Bank ("Bank") offers a number of services that allow you access to the funds in your account(s) by an electronic fund transfer. An electronic fund transfer (EFT) is a transfer of funds from or to a consumer's account through use of an automated teller machine (ATM), a point-of-sale (POS) terminal, a computer (including personal computers), through a telephone or transfers resulting from debit card transactions, whether or not initiated through an electronic terminal. An EFT may also include preauthorized transfers to or from your account such as a direct deposit (credit) or recurring payment (debit).

This Disclosure contains information required to be furnished to you by federal regulation. It describes the types of transfers and services available to our consumer customers and explains each consumer customer's rights, applicable liabilities and limitations. Additional information regarding ATMs and debit cards, including but not limited to transaction limitations, liability limitations and other terms/conditions are included in the Cardholder Agreement and Disclosure for Consumer Accounts provided at account opening or upon issuance of your ATM or debit card.

*Note:* As used in this Disclosure, (1) account(s) means a checking, statement savings or other consumer asset account established primarily for personal, family or household purposes; (2) access device refers to Provident Bank's ATM or debit cards, Personal Identification Number (PIN), telephone, Internet, and mobile banking systems, or any other means to access your account(s), or any combination thereof, that can be used by you, the "consumer", to initiate electronic fund transfers to or from your account(s) held at the Bank.

***Illegal Activities Involving The Use Of A Provident-Issued Access Device***
You must not use any access device issued by Provident Bank and/or your Provident account(s) to engage in activities deemed illegal by Federal and/or State laws, including but not limited to Internet gambling. If you use your access device or account to engage in activities deemed illegal by Federal and/or State laws, you understand that you will nevertheless be liable for any authorized transactions made by the use of your access device.

Please read this Disclosure carefully and retain it for future reference.

**SERVICES AVAILABLE**

***Automated Teller Machine (ATM)***
ATMs are located in most of our branches and at other non-branch location(s) throughout our service area. Our ATMs allow for most routine banking functions at any time of the day. Deposits of cash or checks can only be made at designated Provident-owned and/or operated machines. ATMs are accessed through the use of an ATM or debit card and PIN. Transactions conducted at Provident-owned ATMs are free to our customers.

***Point-of-Sale (POS)***
POS terminals allow you to pay for retail purchases with your Provident ATM or debit card. These terminals can be found at grocery stores, gas stations, and other retail locations. The amount of your purchase is automatically deducted from your deposit account. Debit cards must be linked to a checking account and may be linked to a statement savings account.

***Telephone Banking, Online/Mobile Banking & Online Bill Payment***
You may make EFTs between your accounts and make payments from your deposit accounts to us and to third parties by telephone or online through your personal computer or mobile device via the Internet. Telephone transfers not conducted through Telephone Banking are not considered EFTs.

***Electronic Deposits & Payments***
You can authorize a third party to deposit funds to your deposit accounts (e.g. Social Security payments and payroll deposits). You can also authorize third parties to initiate individual or recurring payments from your accounts (e.g. insurance premium and loan payments).

***Transfer Types***
You may use any access device authorized or issued by Provident Bank to:
    1. withdraw cash from your account(s) with us;
    2. make deposits to your account(s) with us;

3. transfer funds between accounts held at the Bank that you own (identified by your Tax Identification Number  as recorded on our account systems) by using an ATM, telephone, mobile device, or other appropriate electronic terminal to conduct Telephone Banking, ProvidentConnect Online Banking or Online Bill Payment, or Provident Mobile Services electronic fund transfers;

4. pay for purchases at places that have agreed to accept your access device;

5. authorize and instruct the Bank to conduct and/or allow preauthorized transfers to or from your account;

6. conduct other types of EFT transactions, as such services and features become available; and

7. pay bills directly by telephone, online or mobile banking, and/or online bill payment from your accounts and on the days you request.

Some of the above listed services or transfer types may not be available at all ATM, electronic terminals and/or locations.

### *Electronic Check Conversion*

You may authorize a merchant or other payee to make a one-time electronic payment from your checking account using information from your check to pay for purchases and to pay bills by authorizing the third party to convert your check to an electronic withdrawal.

## LIMITATIONS ON FREQUENCY & TRANSFER AMOUNTS

### *ATM & Debit Card Limits*

The table below sets forth the daily transaction limitations ("Daily Limits") that apply when using your ATM or debit card:

| TYPE OF CARD | | |
|---|---|---|
| DAILY LIMITS | PROVIDENT ATM CARD | PROVIDENT DEBIT MASTERCARD |
| Total Number of Cash Withdrawals | Unlimited | Unlimited |
| Total Amount of Cash Withdrawn | $500 | $600 |
| Total Amount of Purchases | $500[1] | $2,500 |
| Total Cash Withdrawn and Purchases | $1,000 | $3,100 |

[1]Restricted to point-of-sale transactions using cardholder's PIN.

*Note:* Individual cardholder limits may vary based upon internal considerations such as how and when your account/debit card was issued and/or acquired by the Bank.

### *External Transfers Conducted Through Online Banking*

External transfers conducted using Provident Bank's online banking service (ProvidentConnect) are limited to a daily limit of $2,000 from each of your Provident accounts. This daily limit is applicable to external transfers (i.e. transfers from your Provident account to an account at another financial institution) conducted Monday through Friday. Any transfers requested on Saturday, Sunday or a Federal Holiday will be added to transfer requests made on the following business day. Note: This transaction limitation does not affect transfers to or between your Provident accounts.

### *Other Limitations*

You will be denied use of our EFT services if: (1) you exceed any of the daily limits previously set forth; (2) you do not have adequate funds available in your account to conduct the requested transaction; or (3) you do not enter the correct PIN code or other required information.

There is a limit on the number of denied PIN code attempts that we will permit. Once this number has been reached, any further attempts to access your accounts may result in the capture and retention or disabling of the access device. For security reasons, the number of failed attempts that result in the retention or disabling of your access device is confidential.

Provident Bank will not authorize overdrafts on your checking account for the following transactions, unless you specifically authorize us to do so by opting-in to our Overdraft Privilege (ODP) service:

• ATM withdrawals and transfers
• One-time debit card transactions

To have ODP coverage available for these transactions, you must opt-in to Provident's ODP Service. If you opt-in and one or more of these transactions overdraws your account, the Bank may pay the transactions at its sole discretion and charge you our standard

overdraft fee(s). If you do not opt-in to our ODP Service, and you try to conduct a transaction without sufficient funds on deposit in the affected account, your transaction will most likely be declined.

An overdraft occurs when you write a check, conduct an ATM withdrawal or transfer, use your debit card to make a purchase, or make an automatic bill payment or other electronic payment for an amount greater than the balance in your checking account.

### Statement Savings & Money Market Account Transaction Limits

Federal regulations require us to limit the number of pre-authorized or automatic transfers that you may make from your statement savings or money market account during a month or statement period. Please see the account disclosure provided at account opening or our "Consumer Deposit Accounts Terms and Conditions Agreement" for details.

### Passbook Transaction Limits

Passbook accounts are not eligible for automatic transfers.

### FEES ASSOCIATED WITH PROVIDENT'S EFT SERVICES

No fee is assessed for transactions processed at a Provident-owned ATMs using a Provident ATM or debit card. For select account types, withdrawal transactions processed at non Provident-owned ATMs will result in a fee charged by Provident and/or other ATM service provider(s).

No fees are charged for EFTs conducted through Provident's Telephone Banking, ProvidentConnect Online Banking, Online Bill Payment, and Mobile Banking services or for automated clearing house (ACH) transfers.
Please see the account disclosure provided at account opening for information about ATM, POS, or other EFT fees assessed and refunded when the specific account qualifications are met during the applicable qualification or statement period.

An International Transaction Assessment (ITA) or International Service Assessment (ISA) fee will be applied to each international transaction (i.e., a transaction occurring in any country outside the United States, Puerto Rico or the U.S. Virgin Islands, and/or where the card-issuing financial institution's country is different than the merchant's country), whether or not foreign currency is converted. Examples of international transactions may include but are not limited to (1) transactions or cash withdrawals conducted while traveling outside the United States, Puerto Rico, or the U.S. Virgin Islands, (2) transactions conducted over the telephone, or (3) transactions conducted over the Internet. The ITA/ISA fee is a percentage of the transaction amount and may be included in the transaction amount or displayed as a separate transaction on your periodic account statement.

### PREAUTHORIZED DEPOSITS & PAYMENTS

### Preauthorized Credits

If you have arranged to have direct deposits made to your account at least once every sixty (60) days from the same person or company, **you can take the following actions to find out whether or not the deposit has been made:**
- **review your periodic account statement;**
- **call us at 800.448.7768;**
- **call or visit any Provident branch; or**
- **if you are a ProvidentConnect Online Banking customer, review your account activity by signing on to our website via the Internet (Provident.Bank) and follow the system prompts.**

### Right To Stop Payment & Procedure For Doing So

If you have told us in advance to make regular payments out of your account, you can stop any of these payments. Here's how: **Call us at 800.448.7768, or write us at Provident Bank, Attn: Card Management Operations Department, P.O. Box 1001, Iselin, New Jersey 08830-1001**, in time for us to receive your request at least three (3) business days before the payment is scheduled to be made. If your stop-payment order is received by us less than three (3) business days prior to the date on which your payment is scheduled to be made electronically, the Bank may, at its sole discretion, honor your request, but it is not obligated to do so.

If you place your stop-payment order by telephone, we may also require you to put your request in writing and get it to us within fourteen (14) days after you call. Your written stop-payment order must be sent to: **Provident Bank, Attn: Card Management Operations Department, P.O. Box 1001, Iselin, New Jersey 08830-1001**. All stop-payment orders are valid until we receive instructions from you either correcting or cancelling the stop-payment order.

With respect to any preauthorized payments, unless you tell us that all future preauthorized payments to a certain recipient are to be stopped, we will limit your stop-payment order to only the specific payment(s) mentioned in your request to us. If you wish to stop all future payments with respect to a particular recipient, within fourteen (14) days of your oral request you **must** confirm in writing you have revoked the authorization given to the payee/originator. If we do not receive confirmation of your revocation, we will not be liable for any payments made to the identified recipient and/or subject of your stop-payment order.

We will charge you a fee for each stop-payment order you give us.

### Notice Of Varying Amounts

If any preauthorized transfers out of your account are to vary in amount, then the individual or entity you are going to pay will have the responsibility to tell you, ten (10) days before each payment, when the payment will be made and how much the preauthorized payment will be. You may choose instead to get this notice only when a payment would differ by more than a certain amount from the previous payment, or when the amount would fall outside certain limits that you set.

### Liability For Failure To Stop Payment Of A Preauthorized Transfer

If you order us to stop one of these preauthorized payments three (3) business days or more before the transfer is scheduled, and we do not do so, we will be liable for your direct losses or damages that you can prove.

## YOUR LIABILITY FOR UNAUTHORIZED TRANSFERS

Tell us AT ONCE if you believe that any access device issued to you by the Bank has been lost or stolen, or if you believe that an electronic fund transfer has been made without your permission using information from your check, or if you otherwise become aware that there has been an unauthorized transfer of funds from your account. Telephoning us is the best way of keeping your possible losses down.

You could lose all the money in your account(s), plus your maximum overdraft credit line, if applicable. The "General Liability" and "Mastercard® Zero Liability Policy" sections below set forth your liability with respect to unauthorized transfers from your account(s).

### General Liability

If you tell us within two (2) business days after you learn of the loss or theft of your access device, you can lose no more than $50 if someone used your access device without your permission.

If you DO NOT tell us within two (2) business days after you learn of the loss or theft of your access device, and we can prove we could have stopped someone from using your access device without your permission if you had told us, you could lose as much as $500.

Also, if your statement shows transfers that you did not make, including those made by card, code or other means, tell us AT ONCE. If you DO NOT tell us within sixty (60) days after the statement was mailed to you, you may not get back any money you lost after the sixty (60) days if we can prove that we could have stopped someone from taking the money if you had told us in time.

### Mastercard® Zero Liability Policy

With respect only to Provident Debit Mastercard cardholders, you will not be liable for any unauthorized debit card transactions (signature- and pin-based) using your lost or stolen debit card if: (i) you can demonstrate that you have exercised reasonable care in safeguarding your card from the risk of loss or theft, and (ii) upon becoming aware of loss or theft, you promptly report (i.e. within two (2) business days as stated in the General Liability section above) the loss or theft to us.

Note, however, that your maximum liability under this provision may be increased to the extent allowed under applicable law if the Bank has determined that you were grossly negligent or fraudulent in the handling of your account or your Provident Debit Mastercard.

Following the procedures outlined in the "General Liability" section will help to ensure you receive maximum protection under the Mastercard® Zero Liability policy. Accordingly, please refer to the provisions set forth for any and all unauthorized transactions on your account.

## DOCUMENTATION OF TRANSACTIONS

### Terminal Transfers

You can get a receipt at the time you make any transfer to or from your account using one of our ATMs (including machines that only dispense cash). The receipt will identify: (1) the amount of the transfer; (2) the date of the transfer; (3) the access device used; (4) the type of transfer; (5) the type of account to or from which funds were transferred; (6) the last four (4) digits of the account number(s) to and/or from which funds have been transferred; and (7) the address and identifying number of the electronic terminal used.

### Periodic Statements

You will get a periodic account statement unless there are no transfers in a particular statement period. In any case, you will get a statement at least quarterly. Statements will be mailed to you at the address we have on record for you, unless you have agreed to receive your statement electronically and/or have made other arrangements. It is your responsibility to promptly notify the Bank of any changes in your address or email address.

***Passbook Account With Preauthorized Credits***
If you bring your passbook to us, we will record any electronic deposits that were made to your account since the last time you brought in your passbook.

## THE BANK'S LIABILITY FOR FAILURE TO COMPLETE AN EFT

If we do not complete a transfer to or from your account on time or in the correct amount according to our agreement with you, we will be liable for your losses or damages. However, there are some exceptions. We will not be liable, for instance, if:
• through no fault of yours, you do not have enough money in your account to make the transfer and you have not authorized the Bank to honor ATM or one-time debit card transactions that result in an overdraft through the use of our Overdraft Privilege (ODP) service;
• the transfer would go over the credit limit on your overdraft line of credit (if applicable);
• the ATM where you are making the transfer does not have enough cash;
• the ATM, computer system, electronic terminal or network was not working properly and you knew about the breakdown when you started the transfer;
• circumstances beyond our control (such as fire or flood) prevent the transfer, despite reasonable precautions that we have taken;
• we do not receive sufficient information to complete the transfer;
• your account has been closed or your EFT privileges have been revoked or cancelled;
• your account is frozen because your co-depositor notified us of a dispute between you or because of a court order, legal process or other claim;
• the access device that you attempted to use to make the transfer was reported lost or stolen;
• we are protecting the security of any account, system, network or otherwise;
• as otherwise stated in Provident Bank's Cardholder Agreement and Disclosure for Consumer Accounts, and/or Consumer Deposit Accounts Terms and Conditions Agreement.

## BANK'S BUSINESS DAY

For the purposes of these disclosures, the Bank's business days are Monday through Friday. Saturdays, Sundays and Federal Holidays are NOT included. Transactions completed after 3:00 p.m. (ET), or such later time that may be posted at a Provident-owned ATM, are considered to be conducted on the next business day.

## CONFIDENTIALITY

We may disclose information to third parties about your account or the transfers you make:
• where it is necessary for completing transfers or to resolve errors involving your account; or
• in order to verify the existence and condition of your account for a third party, such as a credit bureau or merchant; or
• in order to comply with government agency or court orders; or
• if you give us your written permission.

## REPORTING UNAUTHORIZED TRANSFER OR LOST-STOLEN ACCESS DEVICE

If you believe that any of your access devices have been lost, stolen, or compromised or that someone has transferred or may transfer money from your account without your permission, **call us immediately at 800.448.7768 or write to us at Provident Bank, Attn: Card Management Operations Department, P.O. Box 1001, Iselin, New Jersey 08830-1001.**
You should also call the number or write to the address listed above if you believe a transfer has been made using the information from your check without your permission.

When contacting the Bank concerning an unauthorized transfer or a lost, stolen or compromised access device, please review the Bank's procedures for handling such inquires, which are set forth in the section found in this Disclosure titled: *Procedures For Handling Errors Or Questions On Your Account.*

## PROCEDURES FOR HANDLING ERRORS OR QUESTIONS ON YOUR ACCOUNT

In Case of Errors or Questions About Your Electronic Transfers:
 • telephone us at 800.448.7768; or
 • write us at: Provident Bank Attn: Card Management Operations Department P.O. Box 1001 Iselin, New Jersey 08830-1001; or
 • contact us online by visiting www.Provident.Bank and clicking "Contact Us" on the Bank's home page, and providing your contact information as requested
as soon as you can, if you think your statement or receipt is wrong or if you need additional information about a transfer listed on the statement or receipt.

We must hear from you no later than sixty (60) days after we sent the FIRST statement on which the problem or error appeared.

When contacting us, please:
 • tell us your name and account number (if any);
 • describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information;
 • tell us the dollar amount of the suspected error.

If you tell us orally, we may require that you send us your complaint or question in writing within ten (10) business days.

We will determine whether an error occurred within ten (10) business days after we hear from you and will correct any error promptly. If we need more time, however, we may take up to forty-five (45) days to investigate your complaint or question. If we decide to do this, we will credit your account within ten (10) business days for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation. If we ask you to put your complaint or question in writing and we do not receive it within ten (10) business days, we may not credit your account.

For errors involving new accounts, point-of-sale, or foreign-initiated transactions, we may take up to ninety (90) days to investigate your complaint or question. For new accounts, we may take up to twenty (20) business days to credit your account for the amount you think is in error.

We will tell you the results within three (3) business days after completing our investigation. If we decide that there was no error, we will send you a written explanation. You may ask for copies of the documents that we used in our investigation.

PVR-1627 (12/18)

# Provident BANK 

Commitment you can count on.℠

**PERSONAL ACCOUNT FEES & SERVICES**

800.448.7768        Provident.Bank

---

## SERVICE FEES

| | |
|---|---|
| Account Balance Verification | $20.00 |
| Account Reconciliation/Research (per hour) | $25.00 |
| ATM/Debit Card Research (per hour) | $25.00 |
| Backup Withholding Setup | $25.00 |
| Cash On Us Checks for Non-Customer (checks over $50.00 to $1,000.00) | $10.00 |
| Checks and Automatic Debits (ACH) Returned for Insufficient Funds, Uncollected Funds and/or Overdraft | $35.00 |
| Checks Returned That Were Cashed or Deposited | $15.00 |
| Collateral Loan Setup | $100.00 |
| Collection of U.S. Savings Bonds | $45.00 |
| Consular Letter | $25.00 |
| Copy of 1099 and Other Tax Documents | $10.00 |
| Copy of Deposit/Withdrawal Ticket or Deposited Item | $10.00 |
| Copy of Paid Check (front and back) | $15.00 |
| Copy of Periodic Account Statement | $15.00 |
| Counter Check (4 checks) | $15.00 |
| Dormant Accounts Inactive for 3 or More Years (per month) | $5.00 |
| Excessive Preauthorized Withdrawals or Transfers (Money Market and Statement Savings Accounts; per check) | $2.00 |
| IRA/Keogh/SEP Transfer or Termination Processing (each plan, each occurrence) | $50.00 |
| International ATM/Debit Card fees | |
| % of transaction amount on ATM withdrawals and debit card purchases | 3% |
| Legal Processes: | |
| Civil Subpoena | $100.00 |
| Levies | $150.00 |
| Official Checks: | |
| Payable to Others | $10.00 |
| Overdraft Protection - Automatic Sweep from Linked Account (per transfer) | $5.00 |
| Stop-Payment Orders (ACH, EFT, check) | $35.00 |
| Stop-Payment Orders Processed Via ProvidentConnect Online Banking (check) | $25.00 |
| Re-deposit Returned Item | $5.00 |
| Replacement of Lost or Stolen ATM/Debit Card | $5.00 |
| Returned Statement | $10.00 |

## WIRE TRANSFER

| | |
|---|---|
| Domestic: | |
| Incoming | $15.00 |
| Outgoing | $30.00 |
| International: | |
| Incoming | $15.00 |

## SAFE DEPOSIT BOX RENTAL (plus applicable Sales Tax)

Contact your local branch for box size and availability:

| Box Type: | | Box Type: | |
|---|---|---|---|
| Type A | $30.00 | Type E | $70.00 |
| Type B | $35.00 | Type F | $100.00 |
| Type C | $45.00 | Type G | $175.00 |
| Type D | $60.00 | Type H | $250.00 |
| Drilling | | | $250.00 |
| Key Replacement (per key) | | | $25.00 |
| Late Payment (10 days grace period) | | | $10.00 |

## OTHER FEES

| | |
|---|---|
| Check Orders | Catalog Price¹ |
| ¹Basic-Style Checks for Plus and Provident Platinum Checking Customers | FREE |
| Paper Statement in lieu of Electronic Statement (consumer request—available on select products only) | $2.00 |
| Coin Machine Counting ² | 10% of coin total |
| ²Fee waived for deposits to Young Savers accounts. | |

## ONLINE BILL PAYMENT

| | |
|---|---|
| All Personal Checking Customers | FREE |

*Note: Not all fees apply to all Provident accounts. Refer to your account disclosure. If your existing account is not shown in the "Account Features" chart, contact your branch for limitations and current fee information.

## COMPUTATIONS

**The Balance on Which We Calculate Interest:**
We use the daily balance method to calculate the interest on all interest-bearing accounts. This method applies a daily periodic rate to the balance in the account each day.

**Balance Requirement and Service Charges:**
Computations for minimum balances and service charges are based on: (1) the average daily balance method for the period when calculating requirements concerning checking and savings

accounts. The average daily balance is calculated by adding the full amount of principal in the account for each day of the period and dividing that figure by the number of days in the period; and (2) for the Provident Platinum Checking account only, these balance calculations include the current principal balance in the related certificate of deposit, Individual Retirement Account, mortgage loan, home equity loan or line of credit, personal loan or line of credit, and/or overdraft line of credit on the day that the calculation is made.

## PROVIDENT DEBIT MASTERCARD® AND AUTOMATED TELLER MACHINE (ATM) CARDS

No fee is assessed for transactions processed at a Provident-owned ATM using a Provident Debit Mastercard or Provident ATM Card. For selected account types (see "Account Features" chart), withdrawal transactions processed at non-Provident owned ATMs will result in a fee charged by Provident and/or other ATM service provider(s).

Please refer to the "Account Features" & "Service Fees" sections of this brochure for a complete listing of debit and ATM card fees charged by Provident Bank.

**Daily Transaction Limits:**
The following table sets forth daily transaction limitations ("Daily Limits") that apply when using your ATM or debit card:

| DAILY LIMITS | Type of Card | |
|---|---|---|
| | PROVIDENT ATM CARD | PROVIDENT DEBIT MASTERCARD |
| Total Number of Cash Withdrawals | Unlimited | Unlimited |
| Total Amount of Cash Withdrawn | $500 | $600 |
| Total Amount of Purchases | $500¹ | $2,500 |
| Total Cash Withdrawn and Purchases | $1,000 | $3,100 |

¹Restricted to point-of-sale transactions using cardholder's PIN.

---

## Account Features

| Account Features | Savings and Club Accounts | | | Checking and Money Market Accounts | | | | | | Relationship Accounts² | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Statement Savings | Hassle-Free Holiday Club | Young Savers³ Statement Savings | New Jersey Consumer Checking | Provident Basic Checking | Provident Plus Checking | Provident Smart Checking℠ | Provident Cash Back Checking | Money Market (Standard) | Provident Platinum Checking℠ | Provident Platinum Money Manager | Provident Prestige Checking | Provident Prestige Money Market |
| Minimum Opening Deposit | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $1,000.00 | $50.00 | $50.00 | $50.00 | $15,000.00 |
| Minimum Balance to Avoid Penalty Fee | $250.00 | - | - | - | - | $2,500.00⁵ | - | - | $1,000.00 | $10,000.00 | - | $1,000.00 | |
| Minimum Balance Penalty Fee⁴ | $3.00 | - | - | - | $5.00 | - | - | - | $10.00 | $25.00⁵ | - | $10.00 | |
| Monthly Service Fee | - | - | - | $3.00 | - | - | - | - | - | - | - | - | |
| Monthly Check Limit | - | - | - | Eight (checks) | Six (checks) | - | - | - | Three⁶ (checks) | - | - | - | |
| Check Writing Fee (in excess of Monthly Check Limit) | - | - | - | $0.50 | $0.50 | - | - | - | - | - | - | - | |
| No Interest Paid on Daily Balances Less Than:⁷ | $50.00 | Paid on all balances | Paid on all balances | - | - | Paid on all balances | - | - | $50.00 | $50.00 | $5,000.00 | - | - |
| Service Charge for Early Account Closure⁸ | $15.00 | - | - | $15.00 | $15.00 | $15.00 | - | $15.00 | $15.00 | - | - | $15.00 | $15.00 |
| ATM Withdrawal at Non-Provident ATMs | - | - | - | $1.50 | - | - | -⁹ | - | -⁹ | - | -¹⁰ | - | - |
| Transaction Penalty Fee | - | - | - | - | - | - | - | - | - | - | - | $25.00¹¹ | - |

## NOTES

1. Related accounts may include any Provident checking, savings, Individual Retirement Accounts, certificates of deposit, consumer mortgage loan and home equity, personal, or overdraft loan/line of credit accounts. Provident Platinum MoneyManager℠ account must be linked to a Provident Platinum Checking℠ account. Provident Prestige Checking must be linked to a Provident Prestige Money Market account.
2. Account owner must be less than 18 years of age to open and maintain this account. Interest rate and APY vary dependent upon type of account opened.
3. Minimum average daily balance required in Plus Checking or any combination of Provident deposit accounts.
4. A balance penalty fee will be charged for average daily balances below stated minimum.
5. For each statement period that the combined principal balances of this account and all other related deposit and loan/line of credit accounts is less than the amount stated, this minimum balance penalty fee will be changed to the amount stated.

6. The minimum amount for checks written on this account is $500.00.
7. Except as noted interest is not accrued/paid on any day when the daily balance falls below the stated amount.
8. Applies to accounts closed within six (6) months of account opening.
9. ATM fees/surcharges assessed by ATM service providers other than the Provident Bank will be refunded when periodic qualification requirements are met; limits may apply—see account disclosure for full details.
10. ATM fees/surcharges assessed by ATM service providers other than Provident Bank will be refunded at the end of each statement period.
11. Process a minimum of one (1) direct deposit and process a minimum one (1) automatic debit which posts and clears your account within each statement period to avoid $25.00 fee.

MEMBER FDIC

**Provident Bank**

## ATM/Debit Cardholder Agreement and Disclosure For Consumer Accounts

**Welcome to Provident Bank!**

The following Consumer ATM/Debit Cardholder Agreement and Disclosure (hereafter referred to as the "Agreement") explains the terms and conditions that govern the use of any Automated Teller Machine Card or Debit Card issued by Provident Bank to initiate or conduct electronic funds transfers to or from a consumer asset account. Please take the time to become familiar with the information contained within this Agreement, and retain it for future reference.

1. **Scope of this Agreement.** This Agreement applies to transfers involving use of your Provident Bank Automated Teller Machine Card ("ATM Card"), Provident Bank Debit Card ("Debit Card") as applicable to personal accounts only. All cards are collectively referred to as "Card" unless otherwise specifically described. The words "you", "your" and "yours" in this Agreement mean the person or persons who use or accept a Card. The words "Provident," "we," "us," and "our" mean Provident Bank. By signing, activating, using or accepting the Card or by allowing anyone to use your Card, you agree to the terms and conditions of this Agreement and Disclosure and that you will be responsible for all authorized transfers made through the use of your Card. This Agreement is in addition to the Consumer Deposit Accounts Terms and Conditions Agreement (your "Deposit Agreement"), our Regulation E – Electronic Funds Transfer Disclosure for Consumer Accounts, our Personal Accounts and Service Fees brochure, and other agreements involving your account or your Card.

2. **Maintenance of a Primary Account**. Use of your Card requires maintaining a primary account that you designated in your name. For a Debit Card, at a minimum you must maintain an eligible Provident Checking Account (your "Primary Account"); with a Provident ATM Card you must maintain an eligible Provident Checking, Statement Savings, or Money Market Account. Withdrawals and purchases are deducted from your Primary Account. In the event you do not select a Primary Account, we will assign one of your accounts in any category

as your Primary Account. You may add, delete or change your designated and Primary Accounts by notifying us in writing or calling our Customer Contact Center or by visiting a branch location.

3. **Definitions**. In this Agreement, the following words shall have the definitions stated:

   - "Account" or "accounts" will mean each of your consumer checking, savings or money market accounts which you have arranged with us to access with your Card;

   - "ATM" will mean an Automated Teller Machine;

   - "Card" will mean a Provident Consumer Debit Card and/or an ATM Card that allows deposits, withdrawals, funds transfers between accounts, balance inquiries at Automated Teller Machines, as well as Point of Sale (POS) transactions at merchants where the Card is accepted;

   - "PIN" will mean the confidential personal identification number or other confidential code provided to you by Provident Bank or selected by you for identification purposes in connection with your use of the Card;

   - "Transfer" will mean any electronic banking transaction, including deposits made with your Card, withdrawals or POS purchases made electronically with your Card, as well as all transfers resulting from your use of the Card even if an ATM is not involved at the time of the transaction.

4. **Use of your Card**. Your Card is an access device used to initiate electronic funds transfers such as deposits, withdrawals, and transfers to or from your checking, statement savings, money market or other consumer asset account, through the use of an ATM, computer, telephone or other electronic means. You may also use your Card to conduct purchase transactions directly with a merchant who accepts your Card; these transactions are commonly referred to as Point of Sale (POS) transactions (hereafter referred to as POS

1

**Provident Bank**

## <u>ATM/Debit Cardholder Agreement and Disclosure For Consumer Accounts</u>

transactions or POS purchases). Whenever you use your Card to make an authorized deposit, withdrawal, transfer, or POS transaction, you are authorizing us to credit or debit the amount of the transaction to/from your Primary Account.

We will assign you, or you may select, a confidential personal identification number (PIN) for your Card. You agree to take all reasonable precautions so that no one else learns your PIN (including not telling or disclosing your PIN to any family member, friend, or other person), not writing your PIN on your Card, and not keeping a record of your PIN in the same wallet or place as your Card. You agree that if you give your Card and PIN to another person to use, or authorize the issuance of a Card to your agent or attorney-in-fact pursuant to a Power of Attorney provided to us, you will be responsible for all future use of that Card by such person and you assume responsibility for all transactions up to the limits allowed by applicable law.

a. *ATM Card.* Your ATM Card may be used at designated ATMs for cash withdrawals, inquiries to accounts, deposits, payments and transfers. At Provident ATMs, you may access up to eight (8) accounts you designate in writing in any combination from the following account categories: checking, statement savings or money market account, or line of credit product/Overdraft Privilege (ODP) overdraft protection limit (by way of making a withdrawal and/or a POS purchase from your primary checking account that exceeds your available balance – see Section 15 for additional information). Your ATM Card may also be used at certain merchant locations for purchases and purchases with cash back.

b. *Debit Card.* In addition to the ATM Card uses described above, your Provident Debit Card may be used for purchases at any authorized merchant that accepts Mastercard® debit cards (see Section 5 for limitations). If you give your card number to make a purchase without presenting your Provident Debit Card (such as for mail/telephone orders or

online purchases), we may honor the transaction and charge your Primary Account.

c. *Important Tips.* "Debit or credit?" A merchant may ask you if your purchase is debit or credit transaction. You have two choices. In both instances your purchase will be subtracted from your primary checking account.

  i. *If you choose debit:* Select the Debit or ATM button and enter your PIN. Use this option if you would like cash back with your purchase.

  ii. *If you choose credit:* Select the credit button and sign the receipt. For some small dollar purchases and when you pay at the gas pump, you may not need to provide a signature.

  Note: Although you may choose debit or credit, the merchant may choose to process your transaction differently.

Like writing a check, using your Card can generate overdraft fees. You should have enough money in your account before you make a purchase and record it in your checkbook register right away regardless of when the purchase is actually subtracted from your account. Here is some helpful information about how debit cards work:

  i. *Authorizations:* Most merchants ask us to authorize your purchase. As with checks, we may authorize the transaction even if you don't have available funds in your account, however, we are not obligated to do so.

  ii. *Holds:* When we give authorization to a merchant, we will reserve or place a hold on funds in your account to pay for your purchase. There are times – for example, at restaurants or for gas purchases, car rentals or hotels – that merchants won't know the exact amount of your purchase when they request the authorization. This means

**Provident Bank**

## ATM/Debit Cardholder Agreement and Disclosure For Consumer Accounts

the authorization could be for an amount higher or lower than your actual purchase amount. Keep this in mind because it could temporarily affect your available balance if your hold amount is different than your actual purchase amount.

See Section 15 for additional information regarding overdrafts.

d. *Non-Provident ATMs.* Use your Card at participating networks. Use of your Card may vary depending on the location and type of ATM you are using and the EFT network through which the transaction is being performed. A specific ATM or Electronic Fund Transfer (EFT) network may not perform or permit all the above transactions. Transactions at non-Provident ATMs may be subject to a surcharge assessed by the terminal owner. In addition, a specific ATM or EFT network may not provide you with access to all of your accounts based on the policies of the ATM-owning institution. Withdrawals from ATMs outside the United States of America generally do not allow statement savings or money market account access. If you have questions regarding whether a certain ATM or EFT network will process a transaction, call or write us as specified in Section 12.

5. **Limitations on Cash Withdrawals and POS Purchases.** You may not use your Card for a transaction that would cause the balance in any of your designated accounts to be less than zero, unless: (a) the account has been previously linked to a designated overdraft account; or (b) the account has been linked to Consumer Overdraft Privilege$^{SM}$ (ODP) Services, is in good standing, has sufficient available funds on the ODP limit, AND you authorize the use of the ODP limit to cover overdrafts resulting from ATM withdrawals/transfers and/or one-time point of sale transactions (see Section 15 for additional information regarding overdrafts). Also, you may not use your Card to transfer money that is not yours to or from your designated accounts. We are not required to complete these transactions,

but if we do, you agree to pay us any excess, improperly withdrawn, or transferred amount immediately upon request by us.

We may stop or limit electronic transfers from your account at any time if it is necessary to maintain or restore the security of the system or of your account.

a. *ATM Card.* The maximum amount of cash you may withdraw from one or more of your designated accounts each calendar day is $500. The maximum Point of Sale ("POS") daily purchase limit is $500. The total daily limit for combined ATM withdrawals and POS purchases is $1,000. Your maximum daily limits are based on the type of account you maintain. Cash withdrawals and POS purchases within these limits may be made from your designated:

   i. Checking accounts, statement savings accounts, money market accounts, overdraft line of credit product, or ODP Overdraft Protection limit (by way of making a withdrawal and/or a POS purchase from your primary checking account that exceeds your available balance) at Provident ATMs.

   ii. Primary Checking or primary statement savings accounts at non-Provident owned ATMs. Access to your linked accounts may be limited at non-Provident ATMs by the machine owner or service provider.

b. *Debit Card.* Unless you have arranged for a specific limit to meet your requirements and we have agreed to these limits, the maximum amount of cash you may withdraw using any Provident issued Debit Card from one or more of your designated/linked accounts each day is $600. The maximum Point of Sale (POS) daily purchase limit is $2,500. The total daily limit for combined Debit Card cash withdrawals and POS purchases is $3,100. See "Personal Accounts & Services Fees" pamphlet and/or "Regulation E – Electronic Funds Transfer for Consumer Accounts" disclosure for card types and specific limits. Cash withdrawals and POS purchase within these limits may be made from:

Provident Bank

## ATM/Debit Cardholder Agreement and Disclosure For Consumer Accounts

i.   Checking accounts, statement savings accounts, money market accounts, overdraft line of credit, or ODP Overdraft Protection limit (by way of making a withdrawal from and/or a POS purchase from your checking account that exceeds your available balance) at Provident ATMs.

ii.   Checking or statement savings accounts at non-Provident owned ATMs. Access to your linked accounts may be limited at non-Provident ATMs by the machine owner or service provider.

The merchant may be required to obtain a transaction authorization/approval from us for any transaction over a certain dollar amount.

The available balance in your Primary Account will be reduced by the amount of any transaction for which the merchant received authorization from us, even if the documentation evidencing the transaction has not yet been received or processed by us. When the matching documentation has cleared through us, any authorization "hold" placed on your account for the amount of the transaction will be released and your Primary Account will be debited for the actual amount of the transaction. You agree that we are not responsible if we do not authorize other POS, ATM or check transactions drawn on your Primary Account while such a hold is in place.

6.   **Foreign Currency Exchange Rates**. When your Card is used for an international transaction, Mastercard will convert the transaction amount from the foreign currency amount to a United States dollar amount, in accordance with its currency conversion procedures set forth in its Operating Regulations in effect at the time the transaction is processed. Currently those regulations provide that the currency exchange rate is either: (a) a rate selected by Mastercard from the range of rates available in wholesale currency markets for the applicable central processing dates, which rate may vary from the rate Mastercard itself receives; or (b) a government-mandated rate in effect for the applicable central processing date, plus an

International Transaction Assessment (ITA) Fee (also known as an International Service Assessment (ISA) Fee) as referenced below in Section 7 and as applicable to currency exchange rate methods (a & b above). The currency exchange rate in effect on the processing date may differ from the rate in effect on the transaction date or on the posting date.

7.   **Service Charges**. You agree to pay any service charges applicable to your Card, including those listed in Provident's "Personal Accounts and Service Fees," which is incorporated herein by reference and which is available at our branch offices. These fees are subject to change. If you use a non-Provident ATM you may be charged a surcharge, which is an additional fee for using that machine imposed by the owner of that ATM. Normally these fees are disclosed at the ATM prior to confirming the transaction. These fees typically appear as part of the withdrawal amount on your account statement.

An International Transaction Assessment (ITA) Fee or International Service Assessment (ISA) Fee will be applied to each international transaction (i.e., transaction occurring in any country outside the United States of America, Puerto Rico or the U.S. Virgin Islands, and where the card-issuing financial institution's country is different than the merchant's country), whether or not the foreign currency is converted. Example of international transactions may include but are not limited to: (a) transactions or cash withdrawals conducted while traveling outside the United States of America, Puerto Rico, or the U.S. Virgin Islands; (b) transactions conducted over the telephone; or (c) transactions conducted over the Internet.

The current ITA/ISA fee is 3.00% of the transaction amount and may be included in the transaction amount or displayed as a separate transaction on your periodic account statement. The amount of the ITA/ISA fee may change from time-to-time at our discretion; you will be notified of this fee at the time you conduct on applicable transaction.

**Provident Bank**

## ATM/Debit Cardholder Agreement and Disclosure For Consumer Accounts

8. **Documentation Concerning Transfers.** Each time you use your Card at a Provident ATM and/or a non- Provident owned ATM, you will have the option to receive a receipt. At POS locations, you may receive an imprinted sales receipt. You will receive a periodic account statement showing all your Card transactions. If you have only a statement savings account, you will receive the statement at least quarterly.

9. **Liability for Failure to Make Transfers.** If we do not complete a transfer to or from your account(s) on time or in the correct amount according to our agreement with you, we will be liable for your actual losses or damages. There are some exceptions to our liability, such as:

- If, through no fault of ours, you do not have enough money in your account to make the transfer and you have not authorized the Bank to honor ATM or one-time debit card transaction(s) which result in an overdraft through the use of our Overdraft Privilege (ODP) service;

- If the transfer would go over the credit limit on your overdraft line of credit (if applicable);

- If the ATM where you are making the transfer does not have enough cash;

- If the ATM, computer system, electronic terminal or network was not working properly and you knew about the breakdown when you started the transfer;

- If circumstances beyond our control (such as a flood or fire) prevent the transfer, despite reasonable precautions that we have taken;

- If we do not receive sufficient information to complete the transfer;

- If your account has been closed or your EFT privileges have been revoked or cancelled;

- If your account is frozen because your co-depositor notified us of a dispute between you or because of a court order, legal process or other claim;

- If the access device that you attempted to use to make the transfer was reported lost or stolen;

- If we are protecting the security of any account, system, network or otherwise;

- If as otherwise stated in Provident Bank's Cardholder Agreement and Disclosure for Consumer Accounts, and/or Consumer Deposit Accounts Terms and Conditions Agreement.

10. **Liability for Unauthorized Use.** Tell us AT ONCE if you believe your Card and/or PIN has been lost or stolen, or that unauthorized use has or may occur, or if you believe that an electronic funds transfer has been made without your permission using information from your Card. Telephoning is the best way of minimizing your possible losses. If you fail to notify us of the loss/unauthorized use, you could lose all the money in your account plus amounts up to your maximum credit limit in your line of credit and/or credit card account(s) or other designated overdraft accounts or limit (if you have requested access to these accounts or limit). If you tell us within two (2) business days after you learn of the loss or theft of your access device, you can lose no more than $50 if someone uses your Card to make unauthorized withdrawals from an ATM or if someone uses your Card to make unauthorized purchases at non-Mastercard merchants.

If you do NOT tell us within two (2) business days after you learn of the loss, theft or possible unauthorized use of your Card and PIN, and we can prove we could have stopped someone from using your Card and/or PIN without your permission if you had told us, you could lose as much as $500 for unauthorized withdrawals from an ATM or unauthorized purchases at non-Mastercard merchants. Also, if your periodic account statement shows transactions that you did not make, including those made by Card, code or other means, tell us AT ONCE. If you do not tell us within sixty (60) days after the periodic account statement was provided to you, you may not recover the money you lost for unauthorized

**Provident Bank**

## ATM/Debit Cardholder Agreement and Disclosure For Consumer Accounts

transactions after the sixty (60) days, if we can prove that we could have stopped someone from using your Card and/or PIN if you had told us in time. If a good reason (such as a long trip or a hospital stay) kept you from telling us, we may extend the time periods.

Under Mastercard's Zero Liability policy, you will not be liable for any unauthorized transactions made through the Mastercard network using your debit Mastercard if: (i) you can demonstrate that you have exercised reasonable care in safeguarding your card from the risk of loss or theft; and (ii) upon becoming aware of a loss or theft, you promptly (i.e. within two (2) business days) report the loss or theft to us. See www.Mastercard.com/zeroliability for full terms and conditions.

You agree to assist us in determining the facts, circumstances and other pertinent information relating to any loss, theft or possible unauthorized use of your Card and to comply with such procedures as we may require in connection with our investigation. If you authorized someone to use your Cards, you are responsible for all transactions they initiate using your Card until you notify us that such transfers are no longer authorized.

You agree to notify Provident Bank immediately at 800.448.7768, if you believe your Card or PIN has been lost or stolen or has otherwise come into the possession or knowledge of another person and the security of your account(s) is threatened. If you cannot reach us by telephone, write us at:

Provident Bank
Card Management Operations Department
P.O. Box 1001
Iselin, New Jersey 08830-1001

You should also call the telephone number or write to the address listed above if you believe a transfer has been made using the information from your Card without your permission.

11. **Illegal Activities and ATM Card or Debit Card Use.** You agree not to use your Card or account(s) to engage in activities deemed illegal by federal and/or state laws, including but not limited to Internet gambling and marijuana related purchases (as dictated by federal or state laws). If you use your Card or Account to engage in certain activities deemed illegal by federal and/or state laws, you understand that you will nevertheless be liable for any authorized transactions made by the use of your Card.

12. **In Case of Errors or Questions About Your Card Transactions.** If you think your statement or receipt is wrong or if you need more information about a transfer listed on the statement or receipt:
    - telephone us at 800.448.7768 Monday thru Friday from 8 a.m. to 7 p.m. and 9 a.m. to 2 p.m. on Saturday; or
    - write us at:
      Provident Bank
      Card Management Operations Department
      P.O. Box 1001
      Iselin, New Jersey 08830-1001; or
    - contact us online by visiting www.Provident.Bank and clicking "Contact Us" on the Bank's home page, and providing your contact information as requested.

We must hear from you no later than sixty (60) days after we send the FIRST periodic statement on which the problem or error appeared.

When contacting us:

- Tell us your business name, last 4 digits of your account number(s) and Card number;

- Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information;

- Tell us the dollar amount of the suspected error.

If you tell us orally, we may require that you send us your complaint or question in writing within ten (10) business days.

Provident Bank

### ATM/Debit Cardholder Agreement and Disclosure For Consumer Accounts

We will tell you the result of our investigation within ten (10) business days [twenty (20) business days for transactions that occurred within 30 days after the first deposit to the account was made] after we hear from you and will correct any error promptly. If we need more time, however, we may take up to forty-five (45) days [ninety (90) days for POS transactions, foreign-initiated transactions and for transactions that occurred within 30 days after the first deposit to the account was made] to investigate your complaint or question. If we decide to do this, we will credit your account within ten (10) business days [twenty (20) days for transactions that occurred within 30 days after the first deposit to the account was made] for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation. If we ask you to put your complaint or question in writing and we do not receive it within ten (10) business days, we are not required to credit your account. We will tell you the results within three (3) business days after completing our investigation. If we decide that there was no error, we will send you a written explanation (via US Postal Service or email). You may ask for copies of the documents that we used in our investigation. If we credit your account with funds while investigating an error, and we conclude no error has occurred, you must repay those funds to us.

13. **Disclosure of Account Information.** We may disclose information to third parties about your account or the transfers you make:

   - where it is necessary for completing transfers or to check for errors involving your account; or
   - in order to verify the existence and condition of your account for a third party, such as a credit bureau or merchant; or
   - in order to comply with government agency or court orders; or
   - if you give us your written permission.

14. **Business Days.** Every day is a business day except Saturdays, Sundays and federal holidays.

15. **Overdrafts.** In the event that the use of your Card results in an overdraft of your Primary Account, we will charge the overdraft and our standard overdraft fee. Overdrafts, which occur in a checking or money market account will be governed by our Consumer Deposit Accounts - Terms and Conditions Agreement, and/or ATM/Debit Cardholder Agreement and Disclosure for Consumer, and/or Consumer Overdraft Privilege$^{SM}$ (ODP) Services as applicable to your accounts(s).

ODP coverage for overdrafts resulting from ATM withdrawals/transfers and/or one-time point of sale transactions require your specific authorization for us to do so by opting-in to our Consumer Overdraft Privilege$^{SM}$ Services. If you opt-in and one of these transactions overdraws your account, Provident may pay the transaction(s) at its sole discretion and charge you our standard overdraft fee (limitations apply; see the "Overdraft Privilege ATM Withdrawal/Transfer and One-Time Debit Card Opt-In Disclosure"). If you do not opt-in to ODP and you try to conduct transactions using your Card without sufficient funds on deposit in the affected account, your transaction will most likely be declined. Opt-in determinations can be made by contacting Provident Bank at 800.448.7768.

16. **Collection Costs.** If you initiate transaction(s) through use of your Card which cause a negative balance in your Primary Account or any applicable overdraft protection feature or service, and if we initiate collection procedures, you agree to pay all collection costs. Also, if we refer the matter to an attorney, you agree to pay the reasonable fees of such attorney and actual court cost where permitted by applicable law.

17. **Ownership of Card.** Any Card that we supply to you is our property and must be returned to us immediately upon demand or upon notice of cancellation of your Card. We reserve the right to revoke your electronic transaction privileges. You agree that we may terminate, limit or modify your right to use your Card at any time in the future without notice to you.

18. **Cancellation.** You may cancel any Card we issued for your use at any time by either calling

7

**Provident Bank**

## ATM/Debit Cardholder Agreement and Disclosure For Consumer Accounts

us at 800.448.7768 or by returning the Card(s) to us with a letter requesting that we cancel the Card at:

Provident Bank
Card Management Operations Department
P.O. Box 1001
Iselin, New Jersey 08830-1001

We may cancel this Agreement at any time. However, your obligation under this Agreement and any charges or authorizations made under it prior to cancellation will remain your responsibility.

19. **Deposits and Payments.** All deposits and payments are subject to our verification and collection. Not all types of deposits (e.g. double-endorsed checks where the original payee is not a Provident account holder and/or owner of the account to which the deposit is being made) can be conducted through a Provident-owned ATM. Provident reserves the right to return any unacceptable deposit types and adjust your account balance accordingly.

20. **Effective Date.** The effective date of your transactions will be the actual date you authorize and/or conduct the transaction, which may differ from the date the transaction is posted to your account and appears on your periodic account statement.

21. **Applicable Law.** This Agreement is governed by the laws, regulations, and rules of the State of New Jersey. Any change in any of the foregoing that may become effective in the future will also govern the Card.

22. **Amendments.** We may change these terms and conditions at any time. We will give you written notice at least twenty-one (21) days before the change(s) become effective if the change(s) will result in increased costs or liabilities to you or more restrictive limitations on the transfers you may make.

23. **Refunds on Purchases.**  No cash refunds will be made to you on purchases made with your Card. Any refund to you by a merchant or seller of

goods or services must be made on a credit voucher submitted to us by the merchant or seller. The amount of your credit will be indicated on your periodic account statement when processed by the merchant or seller.

24. **Claims Against Merchants**. Any claims concerning property or services purchased with your Card must be resolved by you directly with the merchant or seller who accepted your Card, and any claim or defense which you assert, will not relieve you of your obligation to pay us the total sales amount indicated on the sales receipt.

25. **No Right to Stop Payment.** You are not permitted to stop payment on any purchase made through the use of your Card. You are, however, permitted to stop payment on recurring preauthorized transactions as explained in Section 26.

26. **Right to Stop Payment of Preauthorized Transfer and Procedures for Doing So.** If you have told us in advance to make regular automated payments out of your account, you can stop any of these payments by calling us at 800.448.7768 or by writing to us at:

Provident Bank
Card Management Operations Department
P.O. Box 1001
Iselin, New Jersey 08830-1001

in time for us to receive your request three (3) business days or more before the payment is scheduled to be made. If you call, we may require you to put your request in writing and get it to us within fourteen (14) days after you call. If you order us to stop any of these automated payments three (3) business days or more before the transfer is scheduled, and we do not do so, we will be liable to you for your actual losses or damages. If regular automated payments may vary in amount, the person you are going to pay will tell you, ten (10) days before each payment, when it will be made and how much it will be.
If you want to discontinue regular payments on your Card or if your Card or the account to which it is linked is closed, you should notify the

**Provident Bank**

## ATM/Debit Cardholder Agreement and Disclosure For Consumer Accounts

merchant whom you have authorized to make such payment in accordance with the agreement that you've executed with the merchant.

**Note:** To ensure that these recurring payments are no longer processed/accepted by/from the merchant, we may require closure of your existing Card. If we take/require such action, we will issue a replacement Card to you.

27. **Deposits After Account Closed.** We may accept deposits (including merchant credits/refunds) to your account after your account is closed in order to pay outstanding and unpaid purchases made through the use of your Card. However, acceptance of any deposit does not reactivate your account or Card.

28. **Notices and Notifications.** Notices sent by us shall be effective when mailed to you at your address that appears in our records. Notices from you to us must be in writing and will be effective when received by us unless otherwise provided in this Agreement and Disclosure. Unless other specified in this document, telephone notification or contact to/with Provident Bank can be accomplished by calling 800.448.7768; or written notification to Provident Bank should be mailed to:

Provident Bank
Card Management Operations Department
P.O. Box 1001
Iselin, New Jersey 08830-1001

**ATM SAFETY TIPS FOR OUR CUSTOMERS**

**Please practice the following safety tips pertaining to ATM security.**

- Be alert to your surroundings. Immediately cancel any transaction if any circumstance causes you to be suspicious, apprehensive, or concerned for your safety.

- If the ATM is enclosed, please close the entry door leading into the ATM facility upon entering and exiting.

- Do not permit any unknown person(s) to enter the ATM facility after regular banking hours.

- Stand between the ATM and people waiting to use the machine so others can't view your PIN. Always take your receipt with you.

- Place withdrawn cash securely upon your person before exiting the ATM facility or before walking away from the ATM.

- Direct complaints pertaining to security at the ATM by calling Provident Bank at 800.448.7768 or to the State of NJ, Department of Banking and Insurance at 609-292-7272.

- Call the police if emergency assistance is needed.

**Protect your account.**

- Safeguard your PIN; memorize it, and never write it on your card or leave it in your wallet.

- Keep your PIN a secret and never tell it to anyone. You will never be asked by an employee of Provident Bank to provide your PIN to them. Be cautious when giving your account and Card numbers over the telephone or Internet.

- Keep your Card in a safe place. Treat it as you would cash or credit cards, and notify us immediately if it is lost or stolen.

PVR-2011 (12/18)

**Consumer Overdraft Privilege<sup>sm</sup> Services**

**INTRODUCTION**

At Provident Bank we encourage you to manage both your checking account and your personal finances in a responsible manner. We also understand that there are times when the unexpected occurs or unforeseen problems leave you short of cash in your checking account. These situations can cause an account to become overdrawn, a check to be returned unpaid due to insufficient funds, or an ATM or debit card point-of-sale (POS) transaction to be denied which can be an awkward and costly experience. While we certainly do not encourage you to conduct transactions for more than the amount of money in your account, we do want to help you avoid the embarrassment, as well as additional merchant fees and other negative experiences, that might result if a check is returned unpaid or an ATM or debit card POS transaction (an electronic fund transfer) is denied.

That's why we extend Overdraft Privilege<sup>sm</sup> to our valued checking customers. Overdraft Privilege (ODP) provides for the discretionary payment by Provident Bank of overdrafts on your eligible account. The amount of overdraft coverage available through our ODP Service is based on your specific account activity and is subject to change periodically. Upon the payment of a check or honoring of an electronic fund transfer request, an ATM withdrawal, or a point-of-sale/debit card purchase where the actual funds on deposit are less than each check, transfer, withdrawal or transaction amount, the Bank will charge its standard overdraft fee (please refer to Provident Bank's Personal Accounts and Service Fees for the exact overdraft fee amount).1

We believe that Overdraft Privilege complements our checking products and gives our checking customers a value-added convenience.

Please read the information contained under "Frequently Asked Questions" and the enclosed Overdraft Privilege Policy to learn more about how Overdraft Privilege works!

<sup>1</sup> Provident Bank will not authorize the payment of overdrafts caused by ATM withdrawals/transfers and one-time debit card transactions unless you specifically authorize us to do so by opting into Overdraft Privilege. To opt-in to Overdraft Privilege for these transactions (and any other transactions) simply familiarize yourself with the information in this brochure, read the disclosure contained on the back panel of this brochure, and contact your branch or our Customer Contact Center at 800.448.7768 to opt-in.

**FREQUENTLY ASKED QUESTIONS**

*1. How does Overdraft Privilege (ODP) work?*

As long as you maintain your account in good standing (primarily defined as an account that maintains a positive balance at least once every thirty (30) days; see the enclosed Overdraft Privilege Policy for further details), we may honor overdrafts up to the amount available to cover overdrafts on your account. You should be aware that the amount of the overdraft plus our standard overdraft fee for each item paid (whether paid on the same day or different days) will be deducted from your checking account balance. While getting started with our Overdraft Privilege to cover overdrafts resulting from check and automatic bill payments such as those conducted using ProvidentConnect Online Banking and Bill Payment requires no action on your part, you must opt-in to Overdraft Privilege in order for it to potentially cover overdrafts resulting from ATM withdrawals/transfers and one-time debit card transactions.

*2. What does Overdraft Privilege cost?*

No additional costs are associated with ODP. However, as stated previously, you should keep in mind that **you will be charged our standard overdraft fee for each item paid** using the Overdraft Privilege service.

*3. How does Overdraft Privilege differ from other overdraft protection plans?*

Unlike traditional overdraft lines of credit, ODP:

- is not a loan and does not involve the charging of interest on the amount used to cover your inadvertent overdraft;
- does not involve the submission of an application and an evaluation of your credit history to determine your ability to repay any overdrafts;
- does not guarantee that the Bank will pay any item presented against insufficient funds or overdrawing your account;
- requires the payment of the Bank's standard insufficient funds/overdraft fees for each item presented for payment whether or not the item(s) is actually paid.

Instead, ODP is a discretionary service that simply expedites the traditional manual overdraft review/approval process.

To discuss this products and services available for overdraft protection or apply for a traditional overdraft line of credit, please call our Customer Contact Center at 800.448.7768 or visit any Provident branch office.

*4. What are the minimum and maximum overdraft coverage amounts available under the ODP service?*

The minimum and maximum overdraft coverage amounts are $0 and $1,500, respectively.

*5. Will I have access to the ODP service when I open an account?*

Presuming that you have not entirely opted out of ODP, Overdraft Privilege will be automatically available to pay inadvertent overdrafts on **eligible** new checking accounts thirty (30) days after the account is opened. On the 31st day after account opening and thereafter, the amount available to cover your inadvertent overdrafts will be reflective of our analysis of your account activity over the prior thirty (30) days, including but not limited to:

- number and dollar total of deposits made and the regularity of these deposits; and
- If your account was overdrawn during this period, the amount of time that elapsed before the account was brought to a positive balance.

*6. Will the Bank use my ODP to pay items when I have a sufficient balance in my account?*

No. The Bank will pay your items using available funds in the following order:

- your own funds on deposit;
- your sweep account arrangement, if applicable;
- your Overdraft Checking credit line, if applicable;
- at our discretion, your available/remaining ODP coverage amount

provided that the applicable overdraft protection service has a sufficient balance credit line, available to cover the total of each day's items plus any associated service, insufficient funds, uncollected funds, and/or overdraft fees.

However, please note that the items will be paid against your account in the following processing order:

- withdrawals and other transactions processed at the teller window;

- payments due, charges and other items internally generated by Provident Bank;
- ATM, point-of-sale, other electronic fund transfer items, and ACH debits;
- checks that you have issued in the order that they are received. When more than one (1) check is received for payment on any business day, the checks are processed in check number order.

This processing order may differ (and often does) from the order that you conducted the transactions.

*7. What are some of the ways ODP coverage may be accessed?*

Generally, your ODP may be accessed through:
- checks cashed and other items processed at teller windows;
- checks you write that are payable to third parties;
- debit card point-of-sale transactions (provided that you have opted in to Overdraft Privilege for these transactions);
- ATM transactions (provided that you have opted in to Overdraft Privilege for these transactions).

**However, we strongly advise you to use ODP to cover inadvertent overdrafts and remind you that our standard insufficient funds/overdraft fee will be charged for each transaction that results in use of ODP.**

*8. How do I know when I've used ODP?*

As with all overdrafts, we will notify you by mail and/or email when a request for payment against insufficient funds is presented or an overdraft occurs along with information as to whether the item has been paid or returned, **and** the associated insufficient funds/overdraft fee amount. No interest will be charged on the overdraft balance created as a result of your use of Overdraft Privilege. You should make sure that each specific item amount paid as well as the associated overdraft fees are subtracted from your checkbook register. If an insufficient funds item is returned unpaid, you need only subtract an insufficient funds fee from your checkbook register.

In addition, as prescribed by federal regulatory guidelines, you will receive an additional notice (in the form of a separate notice or a message on your periodic statement) when an overdraft is paid using ODP and an overdraft fee is assessed on more 5 than 6 occasions in a rolling twelve-month period. The purpose of this notice is to (a) draw your attention to the frequent use of Overdraft Privilege, (b) to reaffirm your awareness of other overdraft protection services offered by the Bank such as a linked savings account or an overdraft line of credit and to provide the opportunity to choose one of these services, and (c) to assist you with accessing free or low-cost financial education workshops to assist you in managing your personal finances.

*9. Will the amount available to cover my overdrafts be displayed at Provident ATMs?*

When you use an ATM owned or operated by Provident Bank to perform an "INQUIRY" transaction, the amount available to cover overdrafts **will not** be included in either balance displayed. The "INQUIRY" transaction will display your Account Balance (shown as "AVAIL BAL" on the ATM and ATM receipt, respectively), which is the actual funds in your account and your Available Balance (shown as "LEDGER BAL" on the ATM and ATM receipt, respectively), which is the amount of your funds that are available for your immediate withdrawal. See sample Provident ATM receipt below. Any questions regarding your balance should be directed to our Customer Contact Center at 800.448.7768.



*10. Will the amount available to cover my overdrafts be displayed when I use ProventConnect Online Banking, Bill Payment, and/or Provident Mobile Banking?*

No. Balances shown in ProventConnect Online Banking, Bill Payment, and/or Provident Mobile Banking **do not** include the amount available to cover your overdrafts.

*11. Will the amount available to cover overdrafts be displayed at non-Provident ATMs?*

Provident Bank cannot control the information displayed at ATMs not owned by us. ATM owners/ operators other than Provident Bank will determine if the amount available to cover overdrafts is included in their displays. If you are **unsure** if the account balance displayed at a non-Provident owned ATM includes ODP, please call our Customer Contact Center at 800.448.7768 **prior to** conducting any transactions to avoid being charged an overdraft fee unexpectedly.

*12. Can I access the amount available to cover my overdrafts at the ATM?*

Yes, provided that you have opted-in to Overdraft Privilege coverage for these transactions. After you perform an "INQUIRY" transaction to determine your actual funds available for withdrawal (shown as "LEDGER BAL"), you can withdraw that amount **plus the amount** available to cover overdrafts. Please be aware that the "AVAIL BAL" displayed and shown on your transaction receipt **after** a withdrawal transaction (as well as after a transfer or deposit transaction) **will not include** the remaining amount available to cover overdrafts. See sample Provident ATM receipt for "withdrawal" below. **As stated in Question #1, if you choose to withdraw funds by using ODP, you will be charged our standard overdraft fee each time.**



**13. When I call the Customer Contact Center or access Online Banking to get my balance, is the amount available to cover overdrafts included?**

No. The balances reflected through our Customer Contact Center, Touch Tone Banking, Online Banking, and Mobile Banking **do not** include the amount available to cover overdrafts for your account.

**14. What do I record in my checkbook register when I use ODP or overdraft coverage?**

When you write a check or conduct a transaction for more than the amount in your account, you need to deduct the check/transaction amount(s) **and** the associated insufficient funds/overdraft fee(s). The following example shows how you would record a check/transaction paid using Overdraft Privilege.

Situation: Your account balance is $100.00 and check #123 in the amount of $300.00 is presented for payment:



The negative $235.00 reflects the amount of available ODP funds used [a deduction of $200.00 to cover the ODP amount used to pay check #123 plus the **$35.00** (overdraft fee accurate as of February, 2015].

**15. What amount is available through the ODP service to cover my inadvertent overdrafts?**

The amount of overdraft coverage available through ODP will be based on your specific account activity including but not limited to:
  • number and dollar total of deposits made and the regularity of these deposits
  • how long your account has been open; and
  • how long your account remains overdrawn.

All accountholders should be aware that the amount of overdraft coverage available will be based upon the way you handle your account.  Your account activity will be automatically reviewed each day to determine the amount of funds available to cover items presented that day for which you do not have sufficient collected funds on deposit (i.e. your inadvertent overdrafts).

*16. How soon can I use Overdraft Privilege?*

Presuming that you have not entirely opted out of Overdraft Privilege, your ODP limit will be available to cover inadvertent overdrafts on **eligible** new checking accounts thirty (30) days after the account is opened. The ODP limit may be used to pay inadvertent overdrafts that occur on the 31st day or thereafter. On the 31st day after account opening and thereafter, the amount available to cover your inadvertent overdrafts will be reflective of our analysis of your account activity over the prior thirty (30) days, including but not limited to:
  • number and dollar total of deposits made and the regularity of these deposits; and
  • if your account was overdrawn during this period, the amount of time that elapsed before the account was brought to a positive balance.

To be eligible for Overdraft Privilege:
  • your entire banking relationship with Provident Bank must be in good standing (see Overdraft Privilege Policy for details);
  • your checking account must have had a positive balance (not overdrawn) at least once in the prior thirty (30) days; and
  • if your account was overdrawn, your overdraft amount must not have exceeded the amount available to cover overdrafts.

*17. What if I go beyond the amount available to cover overdrafts?*

Overdrafts above and beyond the amount available to cover overdrafts may result in one or more items not being honored or paid. **Your account will be charged our standard insufficient funds/overdraft fee for each item presented regardless of whether the item was actually paid or returned. A notice will be sent to inform you of our actions.**

*18. I have more than one checking account. Can I get Overdraft Privilege on each account?*

Yes. However, we reserve the right to limit the number of accounts to which Overdraft Privilege may be extended.

*19. What if I do not want to have Overdraft Privilege on my checking account?*

No additional costs are associated with having the peace of mind provided by Overdraft Privilege. **However, if you choose not to have ODP available on your checking account when it is opened, please inform the account representative.** If you would like to cancel Overdraft Privilege coverage **<u>after your account is opened</u>**, or would like to discuss other services and products available to assist you in the event an overdraft occurs, **<u>please notify us</u>** by simply calling our Customer Contact Center at 800.448.7768 or by visiting any one of our branches. Your change request will be effective on the business day following the day we receive/process your request.

*20. How quickly must I repay Overdraft Privilege?*

You must repay your Overdraft Privilege by bringing your account to a positive balance within thirty (30) days of the account becoming overdrawn. As previously stated, we will send you a notice that identifies the overdraft occurrence. In addition, we will send a reminder during the 30-day repayment period stating that you must bring your account to a positive balance. Failure to bring your account to a positive balance within thirty (30) days of it becoming overdrawn will result in the revocation of Overdraft Privilege, and we may take other steps to recover the funds owed to us.

*21. If my Overdraft Privilege is revoked, can it be reinstated if I pay the outstanding balance in full?*

No, once your coverage has been revoked, your account is no longer eligible for Overdraft Privilege. However, **prior to being revoked**, we will send you a letter outlining repayment plans to satisfy any outstanding overdraft balance.

*22. What types of transactions are eligible to be covered by Overdraft Privilege?*

Overdraft Privilege can be made available to cover overdrafts resulting from the following types of transactions:
- checks issued in an amount (either individually or in total) greater than the available and collected balance in your account;
- ACH electronic debit transactions processed through an Automated Clearing House (ACH);
- ATM withdrawals or transfers provided that you have opted-in to have such transactions eligible for coverage through Overdraft Privilege;
- everyday point-of-sale debit transactions using your Provident debit card provided that you have opted-in to have such transactions eligible for coverage through Overdraft Privilege.

As previously stated, you should keep in mind that you **will be charged our standard overdraft fee for items paid using ODP.**

*23. Is an overdraft fee always charged whenever Overdraft Privilege is used to pay (or cover) an overdraft?*

No. No overdraft fee is charged if the resulting overdraft balance is $5.00 or less.

*24. Is there a maximum number or amount of overdraft fees that can be charged against my account each day?*

Yes. The total number of insufficient/overdraft fees the Bank will charge you through Overdraft Privilege for overdrawing you account is limited to six (6) fees in any one (1) business day.

**CONSUMER OVERDRAFT PRIVILEGE (ODP) SERVICE POLICY**

It is the policy of Provident Bank ("the Bank, we, us, or our") to comply with applicable laws and regulations, and to conduct business in accordance with applicable financial safety and soundness standards. This Policy is applicable to account holders only who are at least 18 years of age at account opening and who establish and maintain consumer checking accounts with the Bank that are primarily used for personal and household purposes. In this Policy, consumer accountholders may also be referred to as "you", "your", or "their".

At Provident Bank, we encourage you to manage both your checking account and your personal finances in a responsible manner. We also understand that there are times when the unexpected occurs or unforeseen problems leave you short of cash in your checking account. These situations can cause an account to become overdrawn, a check to be returned unpaid due to insufficient funds, or an ATM or debit card point-of-sale transaction to be denied. This Policy describes the Bank's Overdraft Privilege service and your responsibilities when you utilize the service to cover your inadvertent overdraft occurring in your eligible checking account.

An insufficient funds (negative) balance may result from:
- the presentment of checks, electronic fund transfers (including ATM withdrawals/transfers or debit card transactions provided that you have opted-in for Overdraft Privilege coverage of these transactions), or other withdrawal requests,
- payments preauthorized by you,
- the return as unpaid of items deposited by you,
- the imposition of applicable service charges, or
- drawing on deposited items which, according to Provident Bank's Funds Availability Policy, are treated as not yet "available" or finally paid.

The payment of these items will result in an overdraft.

We are not obligated to pay any item presented for payment if your account does not contain sufficient collected funds. However, **rather than automatically** returning as unpaid any insufficient funds items presented if your:
- eligible account has been open for at least thirty (30) days and has had a positive balance (not overdrawn) at least once in the prior thirty (30) days; and
- entire banking relationship with Provident Bank is maintained in good standing,

on the 31st day after account opening, **we will consider, without obligation on our part, approving your reasonable inadvertent overdrafts for payment** provided that your:
- initial and subsequent deposits made with a check, wire transfer, or other electronic payment  from another financial institution is/are finally collected by the institution on which it/they are drawn/initiated;
- account is not subject to any fraudulent acts or suspicious activity as determined by us in our sole discretion; and
- decision to opt-in to the ODP service remains in effect.

Following the initial thirty (30) days after account opening and throughout the remainder of your use of the ODP service, the amount to cover your inadvertent overdrafts will be reflective of our analysis of your account activity over the prior period, including but not limited to:
- number and dollar total of deposits made and the regularity of these deposits;

- if your account was overdrawn during this period, the amount of time that elapsed before the account was brought to a positive balance; and
- other factors that we in our sole discretion deem relevant.

An account relationship in good standing is defined as:
- you are not in default on any current loan obligation to the Bank,
- you bring your checking account to a positive balance (not overdrawn) at least once every thirty (30) days; and
- your checking account is not the subject of any legal or administrative order or levy.

The amount of overdraft coverage available will be based upon the way you handle your account. As such, your account activity will be automatically reviewed each day to determine the amount of funds available to cover items presented that day for which you do not have sufficient collected funds on deposit (i.e. your inadvertent overdrafts). Any and all fees and charges, including up to six (6) insufficient funds/overdraft fees per business day (set forth in our Consumer Deposit Accounts Terms and Conditions Agreement), will be charged against the amount available to cover overdrafts and will apply singularly to each transaction that overdraws your account whereby the resulting overdraft balance excluding the overdraft fee is greater than $5.00. Transactions subject to this Policy include overdrafts resulting from, but not limited to: payments authorized by check, ACH/electronic items, and ATM/debit card/withdrawals/purchases.

**We may refuse to pay an overdraft for you at any time, even though your account is in good standing and even though we may have previously paid overdrafts for you.** You will be notified by mail of any insufficient funds items paid or returned unpaid that you may have (including related insufficient funds and/or overdraft fees); however, we have no obligation to notify you before we pay or return any item. **The amount of any overdrafts plus our insufficient funds and/or overdraft fee(s) that you owe us shall be due and payable upon demand.** If there is an overdraft paid by us on an account with more than one (1) owner, each owner (and agent, if applicable) shall be jointly and severally liable for such overdrafts plus our fee(s) as previously noted.

LIMITATIONS: This Policy applies only to eligible checking accounts primarily used for personal and household purposes. All savings accounts, all money market accounts, all business accounts, all public fund/charitable organization accounts, and all minor accounts are not eligible. We reserve the right to limit the number of accounts eligible for Overdraft Privilege to one account per household.

**Overdraft Privilege does not constitute an actual or implied agreement between you and Provident Bank, nor does it constitute an actual or implied obligation of or by the Bank. Overdraft Privilege represents a purely discretionary courtesy or privilege that the Bank may provide to you from time-to-time and which may be withdrawn or withheld by us at any time without prior notice, reason or cause.**

**We reserve the right to revoke Overdraft Privilege from any account where its use appears not to be handled in a responsible manner.** If Overdraft Privilege is revoked, your account is no longer eligible for Overdraft Privilege. However, **prior to being revoked**, we will send you a letter outlining repayment plans to satisfy any outstanding overdraft balance.

**OVERDRAFT PRIVILEGE ATM**
**WITHDRAWAL/TRANSFER & ONE-TIME**
**DEBIT CARD OPT-IN INFORMATION**
**FOR YOUR RECORDS**

**What You Need to Know about Overdrafts and Overdraft Fees.**

An overdraft occurs when you do not have enough money in your account to cover a transaction, but we pay it anyway. We can cover your overdrafts in two different ways:

- We have standard overdraft practices (Overdraft Privilege - ODP) that come with your account.
- We also offer other overdraft protection plans, such as a line of credit or a link to another deposit account, which may be less expensive than our standard overdraft practices. To learn more, ask us about these plans.

**What are the standard overdraft practices that come with my account?**

We do authorize and pay overdrafts for the following types of transactions:

- Checks and other transactions made using your checking account number
- Automatic bill payments

We do not authorize and pay overdrafts for the following types of transactions unless you ask us to:

- ATM transactions
- Everyday debit card transactions

We pay overdrafts at our discretion, which means we do not guarantee that we will always authorize and pay any type of transaction.

If we do not authorize and pay an overdraft, your transaction will be declined.

**What fees will I be charged if Provident pays my overdraft?**

Under our standard overdraft practices:

- We will charge you a fee of $35.00* each time we pay an overdraft.
- The total number of insufficient/overdraft fees we can charge you through Overdraft Privilege for overdrawing your account is limited to six (6) fees in one (1) business day. No overdraft fee is charged if the resulting overdraft balance is $5.00 or less.

**What if I want Provident to authorize and pay my overdrafts on my ATM and everyday debit card transactions?**

If you also want us to authorize and pay overdrafts on ATM and everyday debit card transactions, call our Customer Contact Center at 800.448.7768 Monday thru Friday from 8 a.m. to 7 p.m. and from 9 a.m. to 2 p.m. on Saturday, stop by any Provident branch, or visit www.Provident.Bank.

*Amount subject to change. Please see the Personal Accounts and Service Fees to confirm current fee amounts.

PVR – 1613 (05/18)

# CHECK 21

## Important Information About Its Impact On Your Checking Account

Member FDIC

**Provident** BANK

Commitment you can count on.™

---

### Substitute Check Key

**1** The substitute check legal legend which states that: This substitute check is a legal copy of your original check and that it can be used the same way as the original check.

**2** The MICR line of the original and substitute check identifies the financial institution on which the check was drawn, account number, check number and the check amount. A "4" has been added to the beginning of the substitute check MICR line identifying it as a substitute check being processed for collection. A substitute check MICR line may also begin with a "5" which indicates that the check is being returned.

**3** The information in asterisks (*) identifies the financial institution that created the substitute check.

**4** The information in brackets identifies the financial institution that removed the original check from the check processing system.

**5** Barcode Security feature – optional.

**Provident** BANK
Commitment you can count on.™

Member FDIC

800.448.PROV
(800.448.7768)
**ProvidentNJ.com**

PV-1630 (04/14)

---

## SAMPLE SUBSTITUTE CHECK




Original Scanned Front Image

*:545620000:*     5410 ⑈87454521  1:0000576946:

**1**
*011500120*
01 /04/2002
This is a LEGAL COPY of you check. You can use it the same way you would use the original check.

**3**

[0530001831 ] 03 /03/2002
1800539446




**4**

**5**

## CHECK 21 ACT

At The Provident Bank, we think it's important for our customers to learn about laws which affect their account(s). Accordingly, we want to provide information that explains the impact of the "Check Clearing for the 21st Century Act" on your account statement and the checks or check images included with your statement, view your account information online, or request a copy of your original check for proof of payment.

Check 21 was enacted to enable banks to handle more checks electronically, which makes check processing faster and more efficient. With Check 21, many banks no longer move paper checks from one bank to another. Instead, these banks capture a picture of the front and back of the check along with the associated payment information and transmit this information electronically. If a receiving bank or its customer requires a paper check, the bank can use the electronic picture and payment information to create a paper "substitute check."

### What is a substitute check?

To make check processing faster, federal law permits banks to replace original checks with "substitute checks". These checks are similar in size to original checks with a slightly reduced image of the front and back of the original check.

The front of a substitute check states: "This is a legal copy of your check. You can use it the same way you would use the original check." For example, you may use a substitute check as proof of payment just like the original check. Some or all of the checks or check images that you receive back from us may be substitute checks or images of substitute checks. A sample substitute check is included on the reverse side of this brochure.

## CHECK 21: FREQUENTLY ASKED QUESTIONS

### Is electronic check processing secure?

Electronic check processing is not new to the financial industry and is a safe and reliable way of processing payments. It uses technology that has been developed and tested to process your check information securely.

### Will Check 21 result in my check being paid sooner?

With Check 21, banks process more checks electronically. As a result, your check may reach us faster and be paid sooner. Always make sure you have enough money in your account to cover checks you write at the time that you write them.

---

### Will Check 21 affect how quickly I receive funds from the checks that I deposit into my account at The Provident Bank?

Another federal check law (Expedited Funds Availability Act) governs the maximum time period during which bank must make funds available to you. Please refer to our "Funds Availability Policy" which explains when funds from deposited items become available to you.

### When is a substitute check legally the same as the original check?

A substitute check is legally the same as the original if it accurately represents the information on the original check and includes the following statement: "This is a legal copy of your check. You can use it the same way you would use the original check." The substitute check must also have been handled by a bank.

### Can I use a substitute check as proof of payment?

Yes. You can use a substitute check the same as the original because it is legally the same as the original check.

For instance, the IRS will accept your substitute check as proof of payment. If you do not have a substitute check but have a copy of an original check or a copy of a substitute check, you usually can use these documents as proof of payment.

### How are image statements different from substitute checks?

Instead of providing cancelled checks, The Provident Bank provides customers with image statements that show multiple pictures of cancelled checks per page. The pictures on the image statement could represent an original check or a substitute check. Whether the consumer receives an original check, a substitute check, an image statement, or a line item on his or her account statement, check law protects consumers against erroneous and unauthorized check payments.

### Is my bank required to tell me about substitute checks?

The Provident Bank is not required by law to provide a Check 21 notice as we do not return original checks to consumers. However, banks must provide a disclosure when a consumer requests an original check or copy of a check and receives a substitute check in response. In addition, the bank must provide a disclosure if a check the consumer has deposited is returned unpaid to the consumer in the form of a substitute check.

### Can I get my original check if I need it?

Banks are not required to keep your original check for any specific length of time, and Check 21 does not add any new retention requirements. In many cases, the original check may be destroyed. If you request your

---

original check, we may provide you with the original check, a substitute check, or a copy of the check.

### What if I receive a substitute check representing a fraudulent original check?

Check law provides protections against fraudulent checks so that generally you are not responsible if you notify the bank in a timely fashion. This is the case whether you receive an original check, a substitute check, an image statement, or a line item on your account statement.

### How am I protected under Check 21?

Check law protects you against erroneous and unauthorized check payments. In addition, Check 21 contains a number of protections for consumers who receive a substitute check. For example, Check 21 contains a special fund procedure (called "expedited recredit") for a consumer who suffers a loss related to a substitute check he or she received.

### What protections do I have if I receive image statements, access pictures of my checks online, or receive an account statement with descriptive information about my cancelled checks?

Regardless of the form of documentation you receive, check law protects you against erroneous and unauthorized check payments.

### Does the special refund procedure apply if I receive an image statement with a picture of a substitute check but do not receive the actual substitute check?

No. The special refund procedure applies only if you actually received a substitute check. However, check law protects you from improper check charges regardless of whether you receive an original check, substitute check, image statement, or a line item on your account statement. If you feel an error was made to your account, contact us immediately.

### Can I demand a substitute check from my bank instead of a copy?

The Provident Bank may provide you with a substitute check, but we are not required by law to do so. If we do not provide you with a substitute check, you usually can use a copy of an original check or a copy of a substitute check as your proof of payment.

### What should I do if something is wrong with the substitute check that I receive?

A substitute check must show the front and back of the original check and be printed in accordance with many specific standards. If you receive a substitute check that appears to have a problem, such as it contains a bad picture of your original check, contact us immediately.

# Civil Case Information Statement

## Case Details: HUDSON | Civil Part Docket# L-001429-22

**Case Caption:** COLLINS JUDY  VS PROVIDENT BANK

**Case Initiation Date:** 05/02/2022

**Attorney Name:** BRUCE DANIEL GREENBERG

**Firm Name:** LITE DE PALMA GREENBERG & AFANADOR, LLC

**Address:** 570 BROAD ST STE 1201

NEWARK NJ 07102

**Phone:** 9736233000

**Name of Party:** PLAINTIFF : COLLINS, JUDY

**Name of Defendant's Primary Insurance Company**

(if known): Unknown

**Case Type:** COMPLEX COMMERCIAL

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?** NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Does this case involve claims related to COVID-19?** NO

**Are sexual abuse claims alleged by: JUDY COLLINS?** NO

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO

    **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO

    **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** YES  **Title 59?** NO  **Consumer Fraud?** YES

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

| | |
|---|---|
| 05/02/2022 | /s/ BRUCE DANIEL GREENBERG |
| Dated | Signed |

```
HUDSON COUNTY SUPERIOR COURT
HUDSON COUNTY
583 NEWARK AVENUE
JERSEY CITY     NJ 07306
                              TRACK ASSIGNMENT NOTICE

COURT TELEPHONE NO. (201) 748-4400
COURT HOURS  8:30 AM - 4:30 PM

                         DATE:   MAY 02, 2022
                         RE:     COLLINS JUDY  VS PROVIDENT BANK
                         DOCKET: HUD L -001429 22

     THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 4.

     DISCOVERY IS PRESUMPTIVELY 450 DAYS BUT MAY BE ENLARGED OR SHORTENED BY THE
JUDGE AND RUNS FROM THE FIRST ANSWER OR 90 DAYS FROM SERVICE ON THE FIRST
DEFENDANT, WHICHEVER COMES FIRST.
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

     THE MANAGING JUDGE ASSIGNED IS:  HON ANTHONY V. DELIA

     IF YOU HAVE ANY QUESTIONS, CONTACT TEAM     001
AT:  (201) 748-4400.

     IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
 CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
     PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.
                         ATTENTION:
                              ATT: BRUCE D. GREENBERG
                              LITE DE PALMA GREENBERG & AFAN
                              570 BROAD ST
                              STE 1201
                              NEWARK          NJ 07102


ECOURTS
```

JUDY COLLINS, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED

Plaintiff

vs

PROVIDENT BANK

Defendant

20220503175854

Superior Court Of New Jersey

HUDSON Venue

Docket Number: HUD L 1429 22

**Person to be served** (Name and Address):
PROVIDENT BANK
239 WASHINGTON STREET
JERSEY CITY  NJ  07305
**By serving: PROVIDENT BANK**

**Attorney:** BRUCE D. GREENBERG, ESQ.

**Papers Served:** SUMMONS AND COMPLAINT, CERTIFICATION, EXHIBITS, CIS, TRACK ASSIGNMENT NOTICE

**AFFIDAVIT OF SERVICE**
(For Use by Private Service)

Cost of Service pursuant to R. 4:4-3(c)

$ _____.____

**Service Data:**   [X] Served Successfully      [ ] Not Served

Date/Time:   5/4/2022 11:50 AM      _____

[ ] Delivered a copy to him/her personally

[ ] Left a copy with a competent household member over 14 years of age residing therein (indicate name & relationship at right)

[X] Left a copy with a person authorized to accept service, e.g. managing agent, registered agent, etc. (indicate name & official title at right)

Name of Person Served and relationship/title:

JENNY JAVIER

PERSON AUTHORIZED TO ACCEPT SERVICE

**Description of Person Accepting Service:**

SEX:F___  AGE: 36-50  HEIGHT: 5'0"-5'3"      WEIGHT: 131-160 LBS.    SKIN:BROWN      HAIR:BROWN      OTHER: _____

**Unserved:**
[ ] Defendant is unknown at the address furnished by the attorney
[ ] All reasonable inquiries suggest defendant moved to an undetermined address
[ ] No such street in municipality
[ ] Defendant is evading service
[ ] Appears vacant
[ ] No response on:          Date/Time: _____
                            Date/Time: _____
                            Date/Time: _____

Other:

**To Be Used Where Electronic Signature Not Available**
**Served Data:**
Subscribed and Sworn to me this

_____day of _____, 20 _____

Notary Signature:_____

_____   _____
     Name of Notary              Commission Expiration

**Docusign Court Approved E-Signature**

I, MICHAEL MARRA,
was at the time of service a competent adult, over the age of 18 and not having direct interest in the litigation. I declare under penalty of perjury that the foregoing is true and correct.

*Michael Marra*
_____
83F59192CFE084D6...
Signature of Process Server

   05/04/2022
_____
        Date

Name of Private Server: MICHAEL MARRA  Address: 2009 Morris Avenue UNION, NJ 07083  Phone: (800) 672-1952